Elden L. CHURCHILL, as Superintendent
of Schools, S. A. D. # 49, et al.

v.

S. A. D. # 49 TEACHERS
ASSOCIATION.

Supreme Judicial Court of Maine.

Nov. 18, 1977.

Bernstein, Shur, Sawyer & Nelson by F. Paul Frinsko, Portland, for plaintiff.

Sunenblick, Fontaine & Reben by Stephen P. Sunenblick, Portland, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Active Retired Justice.[1]

School Administrative District No. 49 (the District), organized and certified pursuant to 20 M.R.S.A., § 216, entered into an amended collective bargaining agreement (agreement) with the School Administrative District No. 49 Teachers Association (Association) pursuant to 26 M.R.S.A., § 965. Article V(A) of the amended agreement contains the following "agency shop" provision:

"As a condition of continued employment in S.A.D. # 49, non-members of the T.A. [Teachers Association] should pay their equitable proportion of the cost of representation by the T.A.

"Upon written authorization by the said teacher, the Board agrees to authorize the central office to deduct such fees, equal to but not in excess of the equivalent of T.A. dues, and to submit same to the T.A.

"It shall be the sole responsibility of the T.A. to administer these provisions."

A number of teachers, who belonged to the bargaining unit represented by the Association but were not members of the Association, refused to authorize the deduction of any fees from their wages in implementation of Article V(A) of the agreement. At this turn of events, the Association requested from the Board of Directors of the District (Board) the termination of the employment contracts of the recalcitrant teachers and, when no action was being taken on its request, it initiated a grievance proceeding to enforce its demand.

Before the grievance was scheduled to go to arbitration, however, the Superintendent of Schools of the District and the Board of Directors commenced the instant complaint in the Superior Court (Kennebec County) pursuant to 14 M.R.S.A., §§ 5951–5963 for the purpose of having a judicial determination respecting the validity of the reference "agency shop" provision of the agreement in the light of 20 M.R.S.A., § 473(4) and 26 M.R.S.A., §§ 963 and 964(1)(A), (B) and (2)(A). The plaintiffs at the same time sought injunctive relief against the further processing of the alleged grievance through arbitration until the validity of the "agency shop" provision be established.

1. Mr. Justice Dufresne sat at argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

The Association countered with a motion to dismiss the complaint under Rule 12(b)(6), M.R.C.P. for failure to state a claim upon which relief can be granted, and on the further ground that the Court below lacked jurisdiction of the subject matter.

The Superior Court Justice denied the Association's motion to dismiss the complaint and refused the plaintiffs' request for a stay of the arbitration proceeding.

Feeling aggrieved by the Court's failure to rule on the validity of the legal issue—whether the "agency shop" clause was valid—and by the Court's deference to the arbitration process for its resolution, the plaintiffs filed a motion to report the question to the Law Court pursuant to Rule 72(c), M.R.C.P.[2] Over the defendant's objection, the presiding Justice granted the motion by issuing the following order which, in pertinent part, reads as follows:

"[T]he Court being of the opinion that questions of law involved in said Order and Ruling ought to be determined by the Law Court before any further proceedings are taken therein and, on motion by the aggrieved party, . . .

"*It is ordered* that this action be reported to the Law Court in accordance with Rule 72(c) and that all further proceedings related thereto be stayed pending decision of the Law Court."

*Procedural sufficiency of the report*

The appellee Association first bases its objection to the report of the case on the ground that the issue raised by the offensive court ruling was not specifically delineated therein. We said in *Collett v.*

*Bither,* 1970, Me., 262 A.2d 353 at 354 that a trial judge may report an interlocutory matter upon the unilateral request of an aggrieved party, pursuant to Rule 72(c), M.R.C.P., provided that 1) the court has made a ruling in the matter, 2) the movant is an aggrieved party and 3) the trial judge certifies that in his opinion the question of law involved in the interlocutory order or ruling ought to be determined by the Law Court before any further proceedings are taken. Nothing in the rule itself suggests that the ruling about which the movant complains must be expressly set up in formal questionnaire to the Law Court either in the motion to report or in the justice's certificate. So long as the record clearly identifies the issue raised and contains the necessary information to permit a determination of the question, no further particularization is required. Furthermore, whether the trial justice should report an interlocutory order is entirely within his sound judicial discretion. *MacLean v. Jack,* 1964, 160 Me. 93, 198 A.2d 1. There was no abuse of discretion on the part of the presiding Justice who must have viewed the issue properly circumscribed for ready understanding by the Law Court.

*Substantive sufficiency of the report*

The appellee Association's second objection brings up the propriety of the report in the light of 26 M.R.S.A., § 970.[3] The claim is that the Justice below was correct, both, in his refusal to grant summary judgment in favor of the Board for illegality of the "agency shop" provision of the agreement, and, in his denial of the Board's request for a stay of the arbitration proceeding, all, it is

---

**2.** RULE 72(c) *Report of Interlocutory Rulings.* If the court is of the opinion that a question of law involved in an interlocutory order or ruling made by it in any action ought to be determined by the Law Court before any further proceedings are taken therein, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

**3.** 26 M.R.S.A., § 970. Scope of binding contract arbitration

"A collective bargaining agreement between a public employer and a bargaining agent may provide for binding arbitration as the final step of a grievance procedure, but the only grievances which may be taken to such binding arbitration shall be disputes between the parties as to the meaning or application of the specific terms of the collective bargaining agreement. An arbitrator with the power to make binding decisions pursuant to any such provision shall have no authority to add to, subtract from or modify the collective bargaining agreement."

said, pursuant to the doctrine of primary jurisdiction. We did say in *State ex rel. Brennan v. R. D. Realty Corporation*, 1975, Me., 349 A.2d 201, at 207, that

"[a]s a matter of *judicial policy* we will generally not decide an issue concerning which an administrative agency has decision capacity until after the agency has considered the issue." (Emphasis in original)

In *R. D. Realty*, the issue at hand involved a mixed question of law and fact. As pointed out in that case the controlling consideration in support of the doctrine of deference of courts to administrative agencies lies in the fact that the agency "has developed an expertise in resolving the special problems with which it is, by law, required to become concerned," and the "[m]erest prudence suggests that the courts ought to have the benefit of the . . . [Agency's] prior expert evaluation of <u>controverted facts</u>, before it intervenes in a controversy over which the . . . [Agency] has jurisdiction." (Underscoring provided).

There are exceptions to the doctrine of primary jurisdiction excusing the non-exhaustion of administrative remedies, and one of the exceptions is, where the questions involved are questions of law only which the courts must ultimately decide. The issue of the legality of the "agency shop" agreement in the instant case is one solely of law, wherein the special expertise of the administrative agency would be of no significant benefit. See *Stanton v. Trustees of St. Joseph's College*, 1967, Me., 233 A.2d 718, 724.

Also, where the administrative agency is not empowered to grant the relief sought and it would be futile to complete the administrative appeal process, such are special circumstances dispensing with the exhaustion of the administrative remedy prior to turning to the courts for relief. The claimed illegality of the "agency shop" provision of the agreement qualifies as a special situation where original recourse to the courts should be used rather than proceeding at the administrative level. See *Maine State Employees Ass'n v. Williams*, 1977, Me., 373 A.2d 258, 261, where we said:

"The issue of whether 13¢ per mile is a fair reimbursement for the use of a privately owned automobile on state business, being the only rate authorized by statute, cannot be deemed a grievance against a particular state agency since that agency has no power to allow reimbursement beyond the statutory rate."

As provided in 26 M.R.S.A., § 970 (note 3 supra), the only grievances which may be taken before an arbitrator empowered to make binding decisions are disputes between the parties as to the *meaning* or *application* of the specific terms of the collective bargaining agreement. Where the instant agreement contained an "agency shop" provision, such arbitrator must assume its validity as he has no authority to subtract it from the agreement for illegality, nor can he modify the agreement by considering it unlawful. Hence, the report of the Court's ruling was in that aspect proper. See *Lewiston Firefighters Ass'n v. City of Lewiston*, 1976, Me., 354 A.2d 154, 167.

### The Board—an aggrieved party

Prior to the report of the case, the defendant Association had moved to dismiss the plaintiff Board's complaint for declaratory judgment respecting the validity of the "agency shop" provision of the agreement. The presiding Justice denied the Association's motion, but at the same time he refused to grant the Board's request for a stay of the order to submit the alleged grievance to arbitration.

"For aggrievement by a judgment or order, such judgment or order must operate prejudicially and directly upon a party's property, pecuniary or personal rights." *Jamison v. Shepard*, 1970, Me., 270 A.2d 861, 862.

Although the Justice's ruling on the motion to dismiss the Board's complaint was unfavorable to the Association, it is clear, in the light of 26 M.R.S.A., § 970 which compelled the arbitrator to assume the validity of the "agency shop" provision of the agree-

ment, that the Court was actually sustaining the Association's contentions on that issue. The Justice's simultaneous denial of a stay of the arbitration process unmistakably characterizes his overall action as an adjudication prejudicially and directly adverse to the rights of the Board.

We conclude that the Board was an aggrieved party within the meaning of Rule 72(c), M.R.C.P. See *Blaney v. Rittall,* 1973, Me., 312 A.2d 522.

*Legality of the "agency shop" provision under the Municipal Public Employees Labor Relations Law*

The determinative issue which must be resolved in this case is:

Does the "agency shop" provision of the agreement violate the Municipal Public Employees Labor Relations Law, 26 M.R.S.A., §§ 961–972? We answer in the affirmative.

■ Except as may be authorized by statute, public employees have no right to bargain collectively with the employing agency. Without common law collective bargaining rights, public employees enjoy only those rights specifically granted by statute. *City of Hayward v. United Public Employees, Local 390, etc.,* 1976, 54 Cal. App.3d 761, 126 Cal.Rptr. 710. See *City of Biddeford v. Biddeford Teachers Ass'n,* 1973, Me., 304 A.2d 387, 393.

The explicit purpose of the Municipal Public Employees Labor Relations Law (26 M.R.S.A., § 961), expressly declared to be the public policy of the State of Maine, is

"to promote the improvement of the relationship between public employers and their employees by providing a uniform basis for recognizing the right of public employees to join labor organizations of their own choosing and to be represented by such organizations in collective bargaining for terms and conditions of employment."

From the Legislature's own delineation of purpose, we can readily see as composite parts of the legislative intent, 1) the promotion of the employer-employee relationship in the public sector, 2) through uniform legislation, 3) permitting public employees to join labor organizations of their own choosing, 4) for collective bargaining respecting terms and conditions of employment. Nothing therein even suggests any legislative concern for union security which an "agency shop" clause would provide.

On the other hand, the Legislature erected special safeguards around public employees' right to the "free exercise" of the collective bargaining privileges in the following sections of the Act.

In 26 M.R.S.A., § 963, it is provided that

"[n]o one shall directly or indirectly interfere with, intimidate, restrain, coerce or discriminate against public employees or a group of public employees in the free exercise of their rights, hereby given, voluntarily to join, form and participate in the activities of organizations of their own choosing for the purposes of representation and collective bargaining, or in the free exercise of any other right under this chapter."

The "free exercise of any other right under this chapter" surely would include the right not to join the bargaining agency selected by the majority of the bargaining unit, in the absence of any express provision to the contrary.

The Legislature further protected public employees' "free exercise" of the collective bargaining privileges by prohibiting conduct conflicting with the employees' freedom of action. Section 964 of chapter 26 provides in pertinent part:

"1. Public employer prohibitions. Public employers, their representatives and their agents are prohibited from:

A. Interfering with, restraining or coercing employees in the exercise of the rights guaranteed in section 963;

B. Encouraging or discouraging membership in any employee organization by discrimination in regard to hire or tenure of employment or any term or condition of employment;

\* \* \* \* \* \*

**192**

"2. Public employee prohibitions. Public employees, public employee organizations, their agents, members and bargaining agents are prohibited from:

A. Interfering with, restraining or coercing employees in the exercise of the rights guaranteed in section 963 or a public employer in the selection of his representative for purposes of collective bargaining or the adjustment of grievances; * * *."

▮ In our interpretation of the Municipal Public Employees Labor Relations Law we must consider two long established principles of statutory construction: 1) The general rule is that statutes in derogation of the common law must be strictly construed and not extended by implication. *Stanton v. Trustees of St. Joseph's College*, supra, at page 722; *Depositors Trust Company of Augusta v. Johnson*, 1966, Me., 222 A.2d 49; 2) public bodies or officers[4] may exercise only that power which is conferred upon them by law. The source of that authority must be found in the enabling statute either expressly or by necessary inference as an incidence essential to the full exercise of the powers specifically granted. *State v. Fin & Feather Club*, 1974, Me., 316 A.2d 351, 355; *Town of Windham v. LaPointe*, 1973, Me., 308 A.2d 286, 290.

▮ The "agency shop" provision in the instant case is strictly a union security clause designed to induce union membership on the part of unwilling employees. While increased membership in labor organizations and greater participation in their activities is a legitimate goal of unions and the elimination of the free rider would be helpful in attaining such objective, the forced payment of dues or their equivalent under an "agency shop" clause is tantamount to coercion toward membership or, at the very least, toward participation in a labor organization expressly forbidden by statute.

▮ Absent express authorization by the Legislature, an "agency shop" provision in a collective bargaining agreement between public employees and their public employer, which exacts from non-members as a condition of continued employment in the bargaining unit in the guise of an "equitable proportion of the cost of representation" by the bargaining agent "fees equal to but not in excess of the equivalent of" dues to belong to the employee organization, is unlawful as violative of the statute protecting the right of public employees "*voluntarily to join,* form *and participate* in the activities of organizations of their own choosing." Such a provision contravenes the legislative policy contained in 26 M.R.S.A., § 964(1)(A) prohibiting coercion of employees in the exercise of their right of free choice to join and participate in the activities of labor organizations.[5]

Authorities in support of our position: *Smigel v. Southgate Community School District*, 1972, 388 Mich. 531, 202 N.W.2d 305; *New Jersey Turnpike Employees' Union, Local 194 etc. v. New Jersey Turnpike Authority*, 1973, 123 N.J.Super. 461, 303 A.2d 599; *New Jersey Turnpike Employees' Union, Local 194 v. New Jersey Turnpike Authority*, 1971, 117 N.J.Super. 349, 284 A.2d 566, affirmed with modification, 1974, 64 N.J. 579, 319 A.2d 224; *Farrigan v. Helsby*, 1971, 68 Misc.2d 952, 327 N.Y.S.2d 909, aff'd 1973, 42 A.D.2d 265, 346 N.Y.S.2d 39; see also *State Employees' Ass'n of New Hampshire, Inc. v. Mills*, 1975, 115 N.H. 473, 344 A.2d 6; *Town of North Kingstown v. North Kingstown Teachers Ass'n*, 1972, 110 R.I. 698, 297 A.2d 342.

In *Lewiston Firefighters Association*, supra, we said at page 164: "In the absence of controlling language in our own statute, we find the federal experience persuasive."

4. 26 M.R.S.A., § 962(7) provides as follows:
" 'Public employer' means any officer, board, commission, council, committee or other persons or body acting on behalf of any municipality or town or any subdivision thereof, or of any school, water, sewer or other district."

5. We do not intimate what our decision would be if the so-called "agency shop" clause in the instant case had required nonjoinder employees to pay to the bargaining agent only their proportionate share of the costs of securing the benefits conferred upon all members of the bargaining unit.

In the federal legislation enacted in 1935 and 1947, Congress specifically excepted union shop agreements (this includes agency shop agreements since the agency shop is the practical equivalent of the union shop) from an otherwise absolute right of employees to join, form, or assist labor organizations of their own choosing in collective bargaining or to refrain from any or all of such activities, and from conduct constituting unfair labor practices. See National Labor Relations Act, 29 U.S.C. §§ 157, 158(a)(1) and 158(a)(3).[6]

 It is reasonable to believe that in 1969, when it enacted the Municipal Public Employees Labor Relations Law, the Maine Legislature was cognizant of these provisory exception clauses which legalized union security arrangements in the federal sphere, notwithstanding that the federal act contained analogous provisions as our sections 963 and 964 of chapter 26. The omission of any such provisos in our legislation is a sure indicator, absent any legislative history to the contrary, that our Legislators chose not to permit the agency shop in public employment in Maine. *City of Hayward v. United Public Employees, Local 390, etc.*, 1976, 54 Cal.App.3d 761, 126 Cal. Rptr. 710.

 We hold that the "agency shop" provision of the instant collective bargaining agreement between the public employer

District and the municipal public employees thereof is repugnant to sections 963 and 964 of the Municipal Public Employees Labor Relations Law and, therefore, null and void.[7] Thus, the Board's failure to discharge the recalcitrant non-member teachers could not be the basis of a grievance within the scope of the agreement.

### *Agency shop provision in violation of 20 M.R.S.A., § 473(4)*

The plaintiff Board further argues that the "agency shop" provision is also unlawful, because it would permit discharges of public school teachers for a reason beyond the scope of permissive legislation covering the subject.

20 M.R.S.A., § 473(4) empowers public school authorities to dismiss any teacher, including those having tenure rights, "who proves unfit to teach or whose services they deem unprofitable to the school."[8]

In *Superintending School Committee, etc. v. Winslow Education Association*, 1976, Me., 363 A.2d 229, 234, we said in construing the reference statute:

"This language demonstrates that, at least as regards dismissal, the legislature vested sole authority in the school committee, subject only to judicial review."

Such interpretation was in accord with our strict construction rule as applied to

---

**6.** 29 U.S.C. § 157. Right of employees as to organization, collective bargaining, etc.

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, *and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment* as authorized in section 158(a)(3) of this title." (Emphasis supplied)

29 U.S.C. § 158 provides in pertinent part: "(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(3) * * * *Provided*, That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization . . . to require as a condition of employment membership therein . . ."

**7.** We intimate no opinion respecting the legality of an "agency shop" provision when made part of a collective bargaining agreement in the private sector.

**8.** 20 M.R.S.A., § 473(4) reads as follows:

"After investigation, due notice of hearing, and hearing thereon, they shall dismiss any teacher, although having the requisite certificate, who proves unfit to teach or whose services they deem unprofitable to the school; and give to said teacher a certificate of dismissal and of the reasons therefor, a copy of which they shall retain. Such dismissal shall not deprive the teacher of compensation for previous services."

educational legislation. See *Hopkins v. Bucksport*, 1920, 119 Me. 437, 440, 111 A. 734; *Searsmont v. Farwell*, 1825, 3 Me. 450.

We concluded in *Superintending School Committee of the Town of Winslow*, supra, that, without consideration of P.L. 1976, c. 723,[9] the plaintiff school committee could not be forced by interest arbitration to accept the "just cause" and arbitration provisions of a proposed collective bargaining agreement.

The question of the validity and enforceability of the "agency shop" provision of the instant collective bargaining agreement would ordinarily be moot by reason of the expiration of the school years to which it applied, but it is not in this case inasmuch as the parties have supplemented the record with their mutual stipulation that "the identical legal questions apply to the presently operative agreement." See *Town of North Kingstown v. North Kingstown Teachers Ass'n*, 1972, 110 R.I. 698, 297 A.2d 342 at page 343, n.1.

In view of the continued presently existing controversy between the parties respecting the lawfulness of the "agency shop" provision of the collective bargaining agreement within the context of the impact of the 1976 amendment to the teacher-discharge statute, and, considering that, on occasion, courts will entertain questions of law in a case even after the same have become moot where the controversial legal points are of great public interest, will authoritatively guide future action of public officers and are likely to recur if left unresolved, we decide the issue. See *King Resources Company v. Environmental Improvement Commission*, 1970, Me., 270 A.2d 863, at 870; *People ex rel. Wallace v. Labrenz*, 1952, 411 Ill. 618, 104 N.E.2d 769, 30 A.L.R.2d 1132.

We hold that the 1976 amendment which provides that just cause for dismissal of teachers or nonrenewal of teacher contracts may be a negotiable item in accordance with the procedure set forth in Title 26, c. 9–A (the Municipal Public Employees Labor Relations Law), for teachers who have served beyond the probationary period, while it may affect the prior interpretation of exclusivity given the teacher-dismissal statute, falls far short of legitimizing the instant "agency shop" provision for purposes of collective bargaining agreements. Absent a specific legislative declaration to the contrary, we must say that the "agency shop" clause in the instant case is repugnant to sections 963 and 964 of the Municipal Public Employees Labor Relations Law.[10]

The entry will be

Case remanded to the Superior Court for further proceedings in accordance with this opinion.

WEATHERBEE, J., sat at argument and participated in consultation, but died prior to the adoption of the opinion.

POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ., and DUFRESNE, A. R. J., concurring.

---

**9.** The 1976 amendment of the school statute, 20 M.R.S.A., § 161(5), states as follows:

"Just cause for dismissal or nonrenewal may be a negotiable item in accordance with the procedure set forth in Title 26, c. 9–A, for teachers who have served beyond the probationary period."

**10.** What the effect of the 1976 amendment will be on interest or grievance arbitration clauses respecting teacher discipline for causes other than nonpayment of monetary amounts equivalent to union dues pursuant to an "agency shop" provision, we *do not decide* at this time.