House Order Propounding Questions
State of Maine
Whereas, it appears to the House of Representatives of the 109th Legislature that the following are important questions of law and that this is a solemn occasion; and
*136 Whereas, a Bill, H.P. 1321, L.D. 1573, attached as Exhibit A, entitled “AN ACT to Fund and Implement Agreements Between the State and the Maine State Employees Association and to Fund and Implement Benefits for Managerial and Other Employees of the Executive Branch Excluded from Coverage Under the State Employees Labor Relations Act,” has been introduced into the Legislature, which bill has raised several important legal questions, and it is important that the Legislature be informed as to the answers to these questions as they relate to the bill; now, therefore, be it
Ordered, that in accordance with the provisions of the Constitution of Maine, the House of Representatives herein submits the following Statement of Facts and respectfully requests the Justices of the Supreme Judicial Court to give to the House of Representatives their opinion on the following Questions of Law:
STATEMENT OF FACT
On October 21, 1977, the Maine State Employees Association submitted its initial proposals to the Governor as public employer for collective bargaining with regard to the three collective bargaining units the Maine State Employees Association represented at that time. The same proposals were subsequently submitted for two other bargaining units represented by the Maine State Employees Association.
The initial proposals included a provision which would have made these bargaining units an “agency shop,” i. e., members of the bargaining unit would not be required to be members of the Maine State Employees Association, but would be required to pay 100% of the dues paid by members of the bargaining unit who were also members of the Maine State Employees Association. While these negotiations were proceeding, the Supreme Judicial Court rendered its decision in Churchill v. SAD # 49, 380 A.2d 186 (Me.1977) in which the court struck down an “agency shop” provision similar to the Maine State Employees Association proposal. Subsequently, the Maine State Employees Association revised its proposal to incorporate the concept of “fair share” payments by nonunion members. (Attached as Exhibit B) Under this proposal, nonunion members of the bargaining unit would pay the equivalent of 80% of the dues paid by union members within the unit. This “fair share” provision was also included as a recommendation in a later fact finders’ report with regard to these negotiations.
On March 10,1979, a tentative agreement with regard to these proposals was reached between representatives of the Governor and the Maine State Employees Association. This tentative agreement included the “fair share” provision as proposed by the Maine State Employees Association and recommended by the fact finders. The tentative agreement was subsequently ratified by the membership of the Maine State Employees Association and the Governor. The Governor then introduced legislation (L.D. 1447) (Attached as Exhibit C) designed to fund and implement these agreements. Subsequent legislation (L.D. 1573) was introduced in essentially the same form as the preceding legislation, but with some changes to reflect a subsequent independent agreement between the Governor and the Maine State Employees Association with regard to the initial agreements.
QUESTIONS OF LAW
QUESTION I: Does Article III of a certain agreement between the State of Maine and the Maine State Employees Association, incorporated by reference into H.P. 1321, L.D. 1573, which Article contains the so-called “fair share” provision requiring payment by non-Maine State Employees Association members of 80% of the normal member’s dues, violate any provision of the Constitution of the United States or the Constitution of Maine, and, in particular, any of those provisions guaranteeing freedom of speech, religion or association?
QUESTION II: Does the aforementioned “fair share” provision on its face violate the provisions of the State Employees Labor Relations Act; 26 MRSA § 979, et seq., and in particular, sections 979-B and 979-C of that Act such that this provision should not *137 have been negotiated absent express statutory authorization by the Legislature?
QUESTION III: If the answer to the foregoing questions is in the negative, is an evidentiary hearing required to determine the validity of the 80% as proposed by the Maine State Employees Association, recommended by the fact-finders and agreed to by the State and the Maine State Employees Association or will that figure be regarded as conclusive unless patently unreasonable?
EXHIBIT A
(Governor’s Bill) (EMERGENCY) FIRST REGULAR SESSION
ONE HUNDRED AND NINTH LEGISLATURE
Legislative Document No. 1573
H. P. 1321 House of Representatives, April 20, 1979 Referred to the Committee on Appropriations and Financial Affairs. Sent up for concurrence and ordered printed.
EDWIN H. PERT. Clerk
Presented by Mr. Pearson of Old Town.
Cosponsor: Mr. Morton of Farmington.
STATE OF MAINE
IN THE YEAR OF OUR LORD NINETEEN HUNDRED SEVENTY-NINE
AN ACT to Fund and Implement Agreements Between the State and the Maine State Employees Association and to Fund and Implement Benefits for Managerial and Other Employees of the Executive Branch Excluded from Coverage under the State Employees Labor Relations Act.
Emergency preamble. Whereas, Acts of the Legislature do not become effective until 90 days after adjournment unless enacted as emergencies: and
Whereas, the 90-day period may not terminate until after the beginning of the next fiscal year; and
Whereas, certain obligations and expenses incident to the operation of state collective bargaining agreements will become due and payable immediately; and
Whereas, it is the responsibility of the Legislature to act upon those portions of tentative collective bargaining agreements negotiated by the Executive Branch which require legislative action; and
Whereas, the Legislature, by such actions, shall not be deemed to have the effect of making any modification in the existing laws of this State that may either permit or prohibit the inclusion, in a negotiated collective bargaining agreement *138 on behalf of state employees, of a provision requiring, as a condition of employment, that employees not members of the labor organization pay to that organization their proportionate share of the costs of securing the benefits conferred upon all members of the bargaining unit or may either permit or prohibit the inclusion in such an agreement of a provision requiring that, as a condition of employment, employees not members of labor organization pay a service fee equal to 80% of the labor organization membership dues as a contribution toward the costs of the labor organization for collective bargaining, contract administration and the adjustment of grievances; and
Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore.
Be it enacted by the People of the State of Maine, as follows:
Sec. 1. Appropriations and available funds. There is appropriated from the General Fund to a special compensation account the sum of $2,829,000 for the fiscal year ending June 30, 1979 and there is made available from the Highway Fund employees compensation plan the sum of $2,358,000 for the fiscal year ending June 30, 1979 to implement the economic terms agreed to by the State of Maine and the Maine State Employees Association for the administrative services, professional and technical services, operations, maintenance and support services, law enforcement services bargaining units and supervisory services bargaining unit.
Sec. 2. Appropriations and allocation. There is appropriated from the General Fund to a special compensation account the sums of $7,227,000 for the fiscal year ending June 30, 1980 and $7,227,000 for the fiscal year ending June 30. 1981, to implement the economic terms agreed to by the State and the Maine State Employees Association for the administrative services, professional and technical services, operations, maintenance and support services, law enforcement services bargaining units and supervisory services.
Sec. 3. Funding. The funding provided by this Act shall include retirement costs and shall be available for all employees covered by these agreements between the State and the Maine State Employees Association, except that employees supported from sources of funding other than the General Fund shall be funded whenever possible from those sources.
Sec. 4. Special account. The funding provided shall be segregated into a special compensation account to be made available as needed upon the recommendation of the State Budget Officer with the approval of the Governor.
Sec. 5. Adjustment of other employees. The current state salary plan for employees in these bargaining units shall be adjusted on April 1, 1979 and July 1, 1979 to reflect the salary provisions of these negotiated agreements. The current salary plans for other employees not in any bargaining unit shall be similary adjusted.
Sec. 6. Effect. Except as provided herein, the provisions of the agreements between the State and the Maine State Employees Association shall prevail over any other provisions of law. Provided, however, that this section shall not, in any way, modify the legal rights of any state employee, under laws existing prior to the enactment of this legislation, with respect to the existence or absence of any *139 legal duty to comply with any provision requiring, as a condition of employment, that state employees not members of the Maine State Employees Association pay a service fee to the Maine State Employees Association as a contribution towards the costs of the Maine State Employees Association for collective bargaining, contract administration and the adjustment of grievances nor shall this section diminish the rights of any state employee provided under the State Employees Labor Relations Act, Maine Revised Statutes, Title 26. chapter 9-B. Notwithstanding the Maine Revised Statutes, Title 5, section 11, the State Controller is authorized to implement the salary benefits that become effective April 1, 1979 and July 1, 1979.
Sec. 7. Employees; similar and equitable treatment. Employees in classifications which are included in the administrative services, professional and technical services, operations, maintenance and support services, law enforcement services and supervisory services bargaining units, but who are excluded pursuant to the Maine Revised Statutes, Title 26, section 979-A, subsection 6, paragraphs C and E shall be given similar and equitable treatment to employees covered by the agreements.
Sec. 8. 5 MRSA § 8, first sentence, as amended by P & SL 1975, c. 147, Part C, Ü 5, is repealed and the following enacted in its place:
The State shall pay for the use of privately owned automobiles for travel by employees of the State in the business of the State such reimbursement as agreed to between the State and their certified or recognized bargaining agent. For employees and state officers and officials not subject to any such agreement, the State shall pay 18<p per mile for miles actually traveled by such employees on such business.
Sec. 9. Unclassified employees subject to Governor’s determination. With respect to individual unclassified employees whose wage rates are subject to the Governor’s determination, the Governor may grant similar and equitable treatment consistent with the salary provisions agreed to in the Supervisory Services Bargaining Unit.
Sec. 10. Employees not subject to Governor’s determination. With respect to classified and unclassified employees whose wage rates are not «subject to determination by the Governor and not in classifications within any bargaining unit, the authorities responsible for determining the wate rates of such employees shall grant similar and equitable treatment consistent with the salary provisions agreed to in the Supervisory Services Bargaining Unit. This section shall not be construed to apply to officers and employees of the Legislative and judicial Branches of the State of Maine or to officers whose salaries are set by the Maine Revised Statutes, Title 2, section 6-A, subsections 1 and 2 and by section 7.
Sec. 11. Carrying clause. Any balances remaining from previous salary accounts and any balances remaining from salary accounts established, by this Act shall not lapse but shall carry forward to June 30, 1981.
Sec. 12. Special authorization for expenditure. There is authorized for expenditure from the Contingent Account to a special account the sum of $10,000 for the fiscal year ending June 30, 1979 to implement as executed letter of agreement between the State and the Maine State Employees Association for the purpose of compensating the attorney or attorneys representing plaintiff state employees in the matter now pending in the Kennebec County Superior Court and docketed as CV-79-232 which plaintiffs are not members of the Maine State Employees Association but are included within the bargaining units covered by *140 the agreements. This action has been brought to determine whether existing law permits or prohibits the inclusion, in a negotiated collective bargaining agreement on behalf of state employees, of a provision requiring, as a condition of employment, that employees not members of the labor organization pay to that organization their proportionate share of the costs of securing the benefits conferred upon all members of the bargaining unit or whether existing law permits or prohibits the inclusion in such an agreement of a provision requiring that, as a condition of employment, employees not members of the labor organization pay a service fee'equal to 80% of the labor organization membership dues as a contribution toward the costs of the labor organization for collective bargaining, contract administration and the adjustment of grievances.
This authorization for expenditure for the purpose of compensating such attorney or attorneys shall continue, to the extent of the authorization, to apply in any subsequent proceeding consistent with the letter of agreement referred to herein.
Emergency clause. In view of the emergency cited in the preamble, this Act shall take effect when approved. ERROR 00012: C2
STATEMENT OF FACT
This bill provides funding and implementation of the agreements reached between the State and the Maine State Employee Association (MSEA) for the administrative services, professional and technical services, operations, maintenance and support services, law enforcement services and supervisory services bargaining units and benefits for managerial, confidential and excluded employees not subject to any collective bargaining agreement.
Members of the MSEA have ratified the tentative agreements reached March 10, 1979 and March 14, 1979.
The economic features of the 4 nonsupervisory agreements are: A retroactive lump sum payment of $15 per week for each week worked during the period from July 1, 1978 to April 1, 1979. The salary schedules are increased by $16 a week effective April 1, 1979 and by $15 or 6%, whichever is greater, effective July 1, 1979. The nonstandard workweek premium is increased to 16%, mileage reimbursement is raised to 18<t per mile and in-state meal allowances are established at máximums of $2.50 for breakfast, $3.50 for lunch and $7 for dinner, including gratuities. Additionally, these agreements provide, as appropriate, for uniforms and telephone allowances, standardized call-out and stand-by pay provisions and payment by the State of any increased premium for dependent coverage resulting from adoption by the board of trustees of the heálth insurance program of schedule “E” of Blue Shield coverage.
The economic features of the supervisory services agreement are: The retroactive lump sum payment of $15 per week for the period from July 1, 1978 to April 1, 1979, the salary schedules are increased $16 or 6%, whichever is greater effective April 1, 1979 and by $15 or 6%, whichever is greater, effective July 1, 1979.
The other economic aspects are comparable to those contained in the nonsupervisory agreement.
Section 6 of this bill provides that the agreements between the State and MSEA shall prevail over other provisions of law. Some areas of the negotiated *141 agreements impact on existing law, particularly provisions dealing with group health coverage, payroll deductions, retirement, vacations, sick leave, reclassifications and reallocations, personnel files, discipline, grievance and arbitration procedures, worker’s compensation and housing for State Prison employees.
Section 6 also provides that enactment of this provision will not, in any way, modify empolyee rights under existing law with respect to the existence or absence of any legal duty to comply with any union security provision in the agreements.
Section 12 provides for funding by the State to pay the costs of an attorney or attorneys to represent nonmembers of MSEA in determining the legality of permitting or prohibiting the inclusion of a union security provision in the agreements pursuant to a letter of agreement between the State and MSEA. The text of the letter of agreement is as follows:
LETTER OF AGREEMENT
This letter is intended to embody our agreement with respect to implementation of the Union Security article in the collective bargaining agreements (the agreements) negotiated between the State of Maine and the Maine State Employees Association (MSEA).
MSEA agrees that it will not implement or enforce the Union Security provision before the sixtieth day following the execution of the Agreements, except to the extent necessary to insure proper jurisdiction and standing before any court or agency of the State. In the event that any state employee or class of employees commences any action, complaint or legal proceeding against the State, MSEA, or both, pursuant to the Maine Declaratory Judgments Act, 14 MRSA $ 5951 et seq., challenging the legality, on any basis, of the Union Security article prior to the expiration of sixty days following the execution of the Agreements, MSEA further agrees that it will not implement or enforce the Union Security article until such time as a final determination, including any appeals, of the question of the legality of such provision has been reached in that case. In the event that such Declaratory Judgment action fials to resolve the basic legal question as the result of irregularities in the initiation of the action, lack of standing of the parties, selection of the judicial forum, failure to exhaust administrative remedies, or other procedural reasons, MSEA further agrees to permit the initiation of a subsequent action, complaint, or legal proceeding, consistent with the opinion in the initial action, within thirty days from the effective date of decision in the initial action. In the event that a subsequent proceeding is initiated within that thirty day period, MSEA agrees that it will not implement or enforce the Union Security provision until such time as a final determination, including any appeals, has been reached in that case. MSEA further agrees that, in the event it is determined that such Union Security provision is lawful, enforcement of the provision will be applied prospectively.
Name Name
For the State of Maine For the Maine State Employees Association
The economic features covering state officers and employees not eligible for collective bargaining are comparable to the salary provisions for the supervisory *142 unit, including the retroactive lump sum payment of $15 per week for each week worked during the period from July 1, 1978 to. April 1, 1979, salary schedule increases of $16 or 6%, whichever is greater, effective April 1,1979, and of %15 or 6%, whichever is greater, effective July 1, 1979. Section 8 increases the mileage allowance for employees not subject to collective bargaining agreements to 18c per mile.
Excluded from eligibility for these salary increases are employees of the Legislative and Judicial Branches. Section 9 allows the Governor discretion to appropriately apply the compensation provisions applicable to managerial and confidential employees without requiring such increases for department heads and others whose salaries have recently been established.
EXHIBIT B
AGREEMENT
between
THE STATE OF MAINE and THE MAINE STATE EMPLOYEES ASSOCIATION
ADMINISTRATIVE SERVICES BARGAINING UNIT
1978-1979
for coverage by this Agreement may also have such payroll deduction during their initial six month period.
ARTICLE III. UNION SECURITY
It shall be a condition of employment that, on or after the thirtieth (30th) day following the execution of this Agreement, all employees covered by this Agreement or who thereafter become covered by the Agreement and who are not and do not become members of the MSEA shall pay a service fee equal to eighty (80) percent of the MSEA dues as a contribution towards the costs to MSEA of collective bargaining, contract administration and the adjustment of grievances. MSEA shall indemnify, defend and hold the State harmless against all claims and suits which may arise as a result of deductions of said fees or other action taken pursuant to this Article.
ARTICLE IV. EMPLOYEE DATA
So long as not prohibited by law, the State shall furnish to MSEA quarterly, at Union expense, a computer listing and a computer tape of the then-available information, specified hereinafter, for each employee covered by this Agreement. The computer listing and tape shall contain, to the extent practicable, the name, address, social security number, class code, classification, pay range and step, employing agency and initial date of hire for each employee covered by this Agreement. MSEA shall indemnify, defend and hold the State harmless against all claims and suits which may arise as a result of the State’s furnishing such listing and tape to MSEA.
*143 EXHIBIT C
(EMERGENCY)
FIRST REGULAR SESSION
ONE HUNDRED AND NINTH LEGISLATURE
Legislative Document No. 1447
H. P. 1263 House of Representatives, March 29,1979 Referred to the Committee on Appropriations and Financial Affairs. Sent up for concurrence and 2,500 ordered printed.
EDWIN H. PERT. Clerk
Presented by Mr. Pearson of Old Town.
Cosponsor: Mr. Morton of Farmington.
STATE OF MAINE
IN THE YEAR OF OUR LORD NINETEEN HUNDRED SEVENTY-NINE
AN ACT to Fund and Implement Agreements Between the State and the Maine State Employees Association and to Fund and Implement Benefits for Managerial and Other Employees of the Executive Branch Excluded from Coverage under the State Employees Labor Relations Act.
Emergency preamble. Whereas, Acts of the Legislature do not become effective until 90 days after adjournment unless enacted as emergencies; and
Whereas, the 90-day period may not terminate until after the beginning of the next fiscal year; and
Whereas, certain obligations and expenses incident to the operation of state collective bargaining agreements will become due and payable immediately; and
Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore.
Be it enacted by the People of the State of Maine as follows:
Sec; 1. Appropriations and available funds. There is appropriated from the ■.General Fund to a special compensation account the sum of $2,829,000 for the fiscal year ending June 30. 1979 and there is made available from the Highway Fund employees compensation plan the sum of $2,358,000 for the fiscal year ending June 30. 1979 to implement the economic terms agreed to by the State of Maine and the Maine State Employees Association for the administrative services, professional and technical services, operations, maintenance and support services, law enforcement services bargaining units and supervisory services bargaining units.
*144 Sec. 2. Appropriations and allocation. There is appropriated from the General Fund to a special compensation account the sums of $7,227,000 for the fiscal year ending June 30. 1980. and $7,227,000 for the fiscal year ending June 30. 1981. to implement the economic terms agreed to by the State and the Maine State Employees Association for the administrative services, professional and technical services, operations, maintenance and support services. law enforcement services bargaining units and supervisory services.
Sec. 3. Funding. The funding provided by this Act shall include retirement costs and shall be available for all employees covered by these agreements between the State and the Maine State Employees Association, except that employees supported from sources of funding other than the General Fund shall be funded'whenever possible from those sources.
Sec. 4. Special account. The funding provided shall be segregated into a special compensation account to be made available as needed upon the recommendation of the State Budget Officer with the approval of the Governor.
Sec. 5. Adjustment of other employees. The current state salary plan for employees in these bargaining units shall be adjusted on April 1, 1979 and July 1. 1979 to reflect the salary provisions of these negotiated agreements. The current salary plans for other employees not in any bargaining unit shall be similarly adjusted.
Sec. 6. Effect. Notwithstanding any other provisions of law. the provisions of the agreements between the State and the Maine State Employees Association shall prevail. This section shall not however, diminish the rights of any state employee provided under the State Employees Labor Relations Act. Maine Revised Statutes, Title 26, chapter 9-B.’ Notwithstanding the Maine Revised Statutes. Title 5. section 11, the State Controller is authorized to implement the salary benefits that become effective April 1. 1979 and July 1. 1979.
Sec. 7. Employees; similar and equitable treatment. Employees in classifications which are included in the administrative services, professional and technical services, operations, maintenance and support services, law enforcement services and supervisory services bargaining units, but who are excluded pursuant to the Maine Revised Statutes. Title 26, section 979-A, subsection 6, paragraphs C and E shall be given similar and equitable treatment to employees covered by the agreements.
Sec. 8. 5 MRSA § 8, first sentence, as amended by P&SL 1975, c. 147, Part C, § 5. is repealed and the following enacted in its place:
The State shall pay for the use of privately owned automobiles for travel by employees of the State in the business of the State such reimbursement as agreed to between the State and their certified or recognized bargaining agent. For employees and state officers and officials not subject to any such agreement, the State shall pay 18<r per mile for miles actually travelled by such employees on such business.
Sec. 9. Unclassified employees subject to Governor’s determination. With respect to individual unclassified employees whose wage rates are subject to the Governor's determination, the Governor may grant similar and equitable treatment consistent with the salary provisions agreed to in the Supervisory Services Bargaining Unit.
Sec. 10. Employees not subject to Governor’s determination. With respect to classified and unclassified employees whose wage rates are not subject to *145 determination by the Governor and not in classifications within any bargaining unit, the authorities responsible for determining the wage rates of such employees shall grant similar and equitable treatment consistent with the salary provisions agreed to in the Supervisory Services Bargaining Unit. This section shall not be construed to apply to officers and employees of the Legislative and Judicial Branches of the State of Maine or to officers whose salaries are set by the Maine Revised Statutes. Title 2, section 6-A. subsections 1 and 2 and by section 7.
Sec. 11. Carrying clause. Any balances remaining from previous salary accounts and any balances remaining from salary accounts established by this Act shall not lapse but shall carry forward through June 30, 1981.
Emergency clause. In view of the emergency cited in the preamble, this Act shall take effect when approved.
STATEMENT OF FACT
This bill .provides funding and implementation of the agreements reached between the State and the Maine State Employees Association (MSEA) for the administrative services, professional and technical services, operations, maintenance and support services, law enforcement services and supervisory services bargaining units, and benefits for managerial, confidential and excluded employees not subject to any collective bargaining agreement.
Members of the Maine State Employees Association have ratified the tentative agreements reached March 10, 1979 and March 14, 1979.
The economic features of the 4 non-supervisory agreements are: A retroactive lump sum payment of $15 per week for each week worked during the period from July 1, 1978 to April 1, 1979. The salary schedules are increased by $16 a week effective April 1, 1979 and by $15 or 6%, whichever is greater, effective July 1, 1979. The non-standard workweek premium is increased to 16%, mileage reimbursement is raised to 18<f per mile and in-state meal allowances are established at máximums of $2.50 for breakfast, $3.50 for lunch and $7 for dinner; including gratuities. Additionally, these agreements provide, as appropriate, for uniforms and telephone allowances, standardized call-out and stand-by pay provisions and payment by the State of any increased premium for dependent coverage resulting from adoption by the board of trustees of the health insurance program of schedule “E”.
The economic features of the supervisory services agreement are: The retroactive lump sum payment of $15 per week for the period from July 1, 1978 to April 1, 1979, the salary schedules are increased $16 or 6%, whichever is greater, effective April 1, 1979, and by $15 or 6%, whichever is greater, effective July 1, 1979.
The other economic aspects are comparable to those contained in the non-supervisory agreement.
The economic features covering state officers and employees not eligible for collective bargaining are comparable to the salary provisions for the supervisory unit, including the retroactive* lump sum payment of $15 per week for each week worked during the period from July 1, 1978 to April 1, 1979 salary schedule increases of $16 or 6%, whichever is greater, effective April 1, 1979, and of $15 or 6%, whichever is greater, effective July 1, 1979. Section 8 increases the mileage allowance for employees not subject to collective bargaining agreements to 18% per mile.
*146 Excluded from eligibility for these salary increases are employees of the Legislative and Judicial Branches. Section 9 allows the Governor discretion to appropriately apply the compensation provisions applicable to managerial and confidential employees without requiring such increases for department heads and others whose salaries have recently been established.
EXHIBIT D
ISSUE # 1
UNION SECURITY
a. All
It shall be a condition of employment that, on or after the thirtieth (30th) day following the execution of this Agreement, all employees covered by this Agreement or who thereafter become covered by the Agreement and who are not and do not become members of MSEA shall pay each pay period a service fee equal to eighty (80) percent of the regular monthly MSEA dues as a contribution towards the costs to MSEA of collective bargaining, contract administration and the adjustment of grievances.
ISSUE # 1
UNION SECURITY
The factfinders recommend that that part of the union proposal mandating a “fair share” contribution be included in the contract; with respect to the remainder of the proposal, requiring “maintenance of membership” for current employees, we recommend that this provision not be included in the contract.
We are well aware of the ideological and legal concerns generated by any “union security” proposal. In Churchill v. S. A. D. # 49 Teachers Association, 380 A.2d 186 (Me.1977), the Supreme Judicial Court held that a “union shop” clause, which generally requires all the members of the bargaining unit to belong to the union representing the unit and also to also pay union dues, was a violation of § 963 of the Municipal Public Employees Labor Relations Law. The court, however, expressly reserved the decision on the legality of “the so called agency shop clause”, which it described as an agreement requiring bargaining unit members to pay only the “proportionate share of the cost of securing the benefits conferred upon all members of the bargaining unit.” Id. n.5 at 192. It is clear, therefore, that the Supreme Judicial Court has not ruled on the legality of the “fair share” proposal made by MSEA. We are consequently expressly precluded from recommending the inclusion of the provision in the contract.
Whether or not a fair share clause is desirable is, of course, a separate question. The fine points of the ideological arguments that have been mounted both for and against union security clauses are well known to the parties; no point would be served in replicating those arguments here. Suffice it to say that the factfinders, while experiencing serious reservations concerning the coercion implicit even in a fair share arrangement, nevertheless concluded that it was a reasonable compromise between the members rights to opt not to belong to an organization they might find politically objectionable and the MSEA right to expect some contribution from each of the beneficiaries of their collective bargaining efforts.
The maintenance of membership clause, however, was thought to be sufficiently similar to the offensive “union shop” clause condemned in Churchill to warrant our recommendation that it not be included in the contract. Apart from its doubtful legality, the factfinders felt that the coercive nature of a maintenance of membership clause was objectionable from the point of view sound labor relations.
ANSWERS OF THE JUSTICES
To the Honorable House of Representatives of the State of Maine:
In compliance with the provisions of section 3 of Article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following answers to the questions propounded on April 26, 1979.
*147 The questions of law submitted to us are important. The occasion is solemn. The House of Representatives has before it an appropriations bill upon which it is required to act. The House asks our opinion whether the agreement, to which its approval of the bill would give effect, contains an unconstitutional, or otherwise illegal, provision, thereby making such approval unconstitutional, or otherwise illegal, action.
QUESTION I: Does Article III of a certain agreement between the State of Maine and the Maine State Employees Association, incorporated by reference into H.P. 1321, L.D. 1573, which Article contains the so-called “fair share” provision requiring payment by non-Maine State Employees Association members of 80% of the normal member’s dues, violate any provision of the Constitution of the United States or the Constitution of Maine, and in particular, any of those provisions guaranteeing freedom of speech?
ANSWER: We answer in the negative.
The only provision of the Federal Constitution we need consider is the First Amendment. The precise question here presented was addressed by the Supreme Court of the United States in Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). That case settles the facial constitutionality of a “so-called ‘fair share’ provision” that purports to limit the service charges to the proportionate costs to the collective bargaining agent of collective bargaining, contract administration and the adjustment of grievances. See also International Ass’n of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); Railway Employes’ Dept. v. Hanson, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956); Association of Capitol Powerhouse Engineers v. Division of Bldg. and Grounds, 89 Wash.2d 177, 570 P.2d 1042 (1977).
We find nothing in the Constitution of Maine that requires a different conclusion.
QUESTION II: Does the aforementioned “fair share” provision on its face violate the provisions of the State Employees Labor Relations Act; 26 MRSA § 979, et seq., and in particular, sections 979-B and 979-C of that Act such that this provision should not have been negotiated absent express statutory authorization by the Legislature?
ANSWER: We answer in the negative.
The comprehensive reach of section 979— D(1)(E)(1) of the State Employees Labor Relations Act, 26 M.R.S.A. § 979 et seq., authorizes the “so-called ‘fair share’ provision” addressed by this question as a subject matter appropriate for collective bargaining and, therefore, as lawful for inclusion in a collective bargaining agreement, unless the provision is otherwise prohibited by “public law.” We are asked whether it is so prohibited by other sections of the State Employees Labor Relations Act, namely, sections 979-B and 979-C, which are “public law.”
Otherwise stated, the question is whether the “so-called ‘fair share’ provision” under consideration “directly or indirectly interfere^] with, intimidate[s], restraints], coeree[s] or discriminate^] against . State employees ... in the free exercise of their rights . . . voluntarily to join, form and participate in the activities of organizations of their own choosing for the purposes of representation and collective bargaining.”
When the Act is read in its entirety it is apparent that, once a labor organization is certified under this Act as the bargaining agent for the employees of the bargaining unit, each employee in that unit is under the obligation, statutorily imposed, to accept the services of that bargaining agent for representational and collective bargaining purposes. 26 M.R.S.A. § 979-F(2)(E). Correlatively, the bargaining agent is under the obligation, statutorily imposed, to represent all the employees within the bargaining unit “without regard to membership in the organization certified as bargaining agent.” Id. It is fairly within the compass of this mutuality of obligation established by statute that each employee within the bargaining unit share in defraying the costs of the representational and collective bargaining services that the bargaining agent is required to provide without discrimination.
Accordingly, the implementation of this obligation by a provision inserted in an agreement arrived at through the collective *148 bargaining process cannot be taken to violate the freedoms guaranteed employees by the Act, and in particular, by sections 979-B and 979-C thereof.
QUESTION III: If the answer to the foregoing questions is in the negative, is an evidentiary hearing required to determine the validity of the 80% as proposed by the Maine State Employees Association, recommended by the fact finders and agreed to by the State and the Maine State Employees Association or will that figure be regarded as conclusive unless patently unreasonable?
ANSWER: We answer in the negative.
We interpret Question III to ask whether, in order for the service fee provision to be valid, the amount of the fee must be established, before the agreement becomes effective, by some proceeding in which evidence is presented. That evidence would presumably bear on whether the amount of that fee represents a proportionate share of the cost to the Association of collective bargaining, contract administration, and adjustment of grievances.
A prior “evidentiary hearing” as to the amount of the fee required to be paid by the nonmembers is not essential to the validity of a clause in a collective bargaining agreement requiring such payment as a contribution to the expenses of the collective bargaining agent. See Abood v. Detroit Board of Education, supra; Railway-Clerks v. Allen, 373 U.S. 113, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1963). However, the fact the amount of the service fee is fixed by the collective bargaining agreement does not make that amount conclusive upon a nonmember who puts the amount in issue in an appropriate judicial proceeding. Abood v. Detroit Board of Education, supra.
Dated: April 30, 1979.
(s) Vincent L. McKusiek Chief Justice
(s) Charles A. Pomeroy
(s) Sidney W. Wernick
(s) James P. Archibald
(s) Thomas E. Delahanty
(s) Edward S. Godfrey
(s) David A. Nichols Associate Justices