Coos,
No. 5567.

PAUL TREMBLAY *& a.*

*v.*

BERLIN POLICE UNION *& a.*

Argued January 6, 1967.
Decided January 30, 1968.

418

*Earl F. Gage* ( by brief and orally ), for the plaintiffs.

*Arthur J. Bergeron* for the Berlin Police Commissioners, filed no brief.

*Broderick, Craig, Bourque & Costakis* ( *Mr. William H. Craig* orally ), for Berlin Police Department Local Union #1444 of the American Federation of State, County and Municipal Employees.

PER CURIAM. The "right of public employees to join or

become members of labor unions is becoming increasingly recognized." *American Federation of State &c. Employees* v. *Keene,* 108 N. H. 68, 69. See Anderson, Legal Aspects of Collective Bargaining in Public Employment, in Developments in Public Employee Relations: Legislative, Judicial, Administrative, 128 ( Warner *ed.* 1965 ). The corresponding right of a municipality to enter into a collective bargaining contract with a labor union has been recognized by statute since the enactment of Laws 1955, ch. 255. *Manchester* v. *Guild,* 100 N. H. 507, 511. That statute, which is a constitutional exercise of legislative power ( N. H. Const., Pt. II, *Art.* 5th; *Opinion of the Justices,* 101 N. H. 544; *Exeter* v. *Kenick,* 104 N. H. 168, 170 ) reads as follows: "Towns may . . . recognize unions of employees and make and enter into collective bargaining contracts with such unions." RSA 31:3 ( supp ). In 1962 the city of Berlin passed an ordinance which expressly empowered all present and future city boards and commissions to recognize unions of their employees and to enter into collective bargaining contracts with such unions.

The plaintiffs contend that the police commissioners and the police department employees are State Officers and not city officers and therefore the statute authorizing collective bargaining by municipalities ( RSA 31:3 ( supp )) has no application. This contention might have had merit under former legislation where police commissioners were appointed by the State. *Gooch* v. *Exeter,* 70 N. H. 413; *Gibbs* v. *Manchester,* 73 N. H. 265; *Gilbert* v. *Berlin,* 76 N. H. 470; *Pollard* v. *Gregg,* 77 N. H. 190. However under more recent home rule legislation ( Laws 1963, 275:3 ) the city of Berlin voted to authorize the mayor and city council to appoint police commissioners instead of their appointment being made by the State. Laws 1963, 275:8. Under this home rule legislation it is clear this police department is managed by the police commissioners who are answerable in turn to the mayor and council of the city ( Laws 1963, 275:4-6 ) who are municipal officials whom the statute authorizes to enter into collective bargaining contracts. ( RSA 31:3 ( supp )). This conclusion is buttressed by the fact that an attempt to retain appointment of police commissioners by the State was defeated when the home rule legislation was being considered in the Senate. See 1963 Journal of the Senate 946. The power of municipalities to recognize unions of their employees is discretionary and not

compulsory and the power resides in the mayor and city council. *American Federation of State &c. Employees* v. *Keene,* 108 N. H. 68, 70. This discretionary power was exercised by the mayor and city council of Berlin by its ordinance of December 3, 1962, whereby the city expressly accepted the provisions of RSA 31:3 ( supp ) and validly conferred upon all city boards and commissions the authority to place those provisions into effect. Therefore we conclude that the Berlin police commissioners had authority to enter into a collective bargaining contract with the union. See Comment, Municipal Employees' Unions; The Climb up Labor's Ladder, 4 Duquesne L. Rev. 137, 141 ( 1965 ); Stutz, Collective Bargaining by City Employees, 15 Lab. L. J. 696 ( 1964 ); Collective Bargaining for Public Employees; An Analysis of Statutory Provisions, 8 B. C. Ind. & Com. L. Rev. 273 ( 1967 ); Gallagher, Municipal Collective Bargaining, An Introduction, 11 New Hampshire Town and City 14 N. H. Municipal Association ( 1968 ).

This collective bargaining agreement is assailed as being an abdication and surrender of municipal sovereignty and "completely contrary to the public interest." As we read and interpret the collective bargaining agreement it contains certain overriding provisions which are designed to make all delegation of authority to the union consistent with and subject to the ultimate authority of the police commission and mayor and council to manage the police department consistently with the statutory directives. Under the contract the union has agreed that there shall be no strikes, slowdowns, stoppage of work "or any interference with the efficient management of the Police Department." Art. 20, section 1. Thus the interest of the public in having uninterrupted police protection is explicitly preserved. See *Manchester* v. *Guild,* 100 N. H. 507, 511. Article 2, section 1 provides that the "Union unreservedly accepts and recognizes the necessity of the Police Department to operate within its budget as set by the City Council." This is an express recognition that the union must operate within the municipal fiscal system and that it is bound by the discretion of the city council. Article 17, section 1 relating to the disposition of grievance procedures and providing for arbitration was specifically amended as follows: "Notwithstanding any provision of the within arbitration clause, the said clause

and all provision[s] thereof shall comply with and be subordinate to the N. H. State Law." Additionally in Article 20, section 1 it is provided that "nothing in the . . . paragraph shall be construed so as to conflict with applicable state laws." These quoted provisions of the contract demonstrate the objective of both the union and the city to enter into a collective bargaining agreement that is legal and consistent with all governing state laws.

The plaintiffs contend that police commissioners have lost the power to make rules and regulations. Article 19, section 3 places the responsibility for making regulations for the health and safety of the employees in the police department and the union members agree to comply with them. The provision that either party to the agreement may request a meeting "to discuss such regulations" is unobjectionable. Article 19, section 2 makes explicit what is already implicit in the agreement which is that the police commissioners will abide by the terms of the contract and that other rules and regulations shall not conflict therewith. The commissioners still have "full authority to make and enforce all rules and regulations for the government of the police force." Laws 1963, 275:5.

The grievance procedure clause of the agreement ( Article 17, section 1 ) is attacked as an unlawful delegation of municipal authority to the union. This clause provides, after a series of preliminary procedures, for an impartial arbitrator to be appointed by the state board of arbitration whose decision is to be final and binding on the parties. If that were the end of the matter, it would present a serious question. But, as previously noted, the clause was specifically amended to provide that it "shall comply and be subordinate to N. H. State Law." This amendment subjects the grievance and arbitration procedure to Laws 1963, 275:5 as well as the State arbitration statute ( RSA 273:12-27 ) which contains a provision that a party may give a notice in writing not to be bound by the arbitrator's decision. RSA 273:22. We conclude that Article 17, section 1 is not an unlawful delegation of the city's authority to control the police department. See *Norwalk Teachers Ass'n.* v. *Board of Education,* 138 Conn. 269, 279-280; Symposium, Collective Bargaining in the Public Service, 22 Pub. Adm. Rev. 1, 8, 18 ( 1962 );

Anderson, The U. S. Experience in Collective Bargaining in Public Employment, in Collective Bargaining in the Public Service; Theory and Practice 21 ( Warner *ed.* 1967 ).

The so-called union shop clause ( Article 3, Section 1 ) is qualified and limited by its terms. The clause in full reads as follows: " *Whenever re-employments are made, or the police department hires new employees,* they shall, within sixty working days become members of the Union Local #1444 by presenting to the police department a proper authorization, approved by the Union president, for the collection of their dues." ( Emphasis supplied ) There is no requirement in this clause, or any other, for maintenance of membership in good standing. This clause, together with the "check off" clause ( Article 4, Section 1 ) for union dues, imposes a financial obligation only. The union cannot cause the discharge of an employee, who has resigned from or has been expelled by the union for any reason other than his withdrawal of the check off authorization.

It is argued that this union shop clause of the collective bargaining agreement is invalid as an unlawful delegation of municipal power and is "ultra vires and void." There is no law which prohibits a union shop in this state and RSA 275:1 prohibits any effort to coerce or compel any person into an agreement "not to join or become a member of any labor organization" as a condition of securing or continuing in any employment. The Legislature has declared as a matter of public policy that collective bargaining for municipal employees is a proper public purpose. In making this declaration it has not excluded police departments ( as some statutes do ) or other public employees in equally essential positions. *Cf.,* Laws 1963, 278:1, now RSA 38-A:18, II ( supp ), which applies to transit employees. Opinions may differ as to the desirability of collective bargaining for public employees but that discretionary decision has been lodged in the municipalities. One city may determine that union recognition results in efficient operation of its departments; another city may decide that public employees should have less rights than private citizens. See Weisenfeld, Public Employees-First or Second Class Citizens, 16 Lab. L. J. 685 ( 1965 ); Cornell, Collective Bargaining by Public Employees Groups, 107 U. Pa. L. Rev. 43 ( 1958 ).

In the present case the police commissioners and the union have, in effect, declared in advance under the collective bargaining

agreement that union security is a reasonable requirement for the efficient and orderly administration of the police department. Stutz, Collective Bargaining by City Employees, 15 Lab. L. J. 696 ( 1964 ). This is a decision they have the right to make because ( 1 ) the Legislature authorized it, ( 2 ) ultimate control remains in the municipality and the police commissioners to hire and fire personnel and manage the police department, ( 3 ) the overriding provisions of the collective bargaining agreement provide that the powers delegated to the union are subordinate to and must be consistent with the powers of the city and its agents in its control over the administration of the police department. Laws 1963, 275:4, 5. See, Comment, Labor Problems in Public Employment, 61 Nw. U. L. Rev. 105, 133 ( 1966 ).

Our conclusion that this union shop clause, as construed, is valid is equally applicable to the seniority provisions ( Articles 6 - 10 ) and for the same three reasons mentioned in the previous paragraph.

*Petition dismissed.*

GRIFFITH, J., took no part in the decision.