123 N.J. Super. 461 (1973)
303 A.2d 599
NEW JERSEY TURNPIKE EMPLOYEES' UNION, LOCAL 194 OF THE AMERICAN FEDERATION OF TECHNICAL ENGINEERS, AFL-CIO, PLAINTIFF-APPELLANT,
v.
NEW JERSEY TURNPIKE AUTHORITY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1972.
Decided April 18, 1973.
*462 Before Judges CARTON, MINTZ and HANDLER.
Mr. Thomas L. Parsonnet argued the cause for appellant (Messrs. Parsonnet, Parsonnet & Duggan, attorneys).
Mr. Joseph R. Postizzi argued the cause for respondent (Mr. David W. Dowd, attorney).
*463 Mr. Francis A. Mastro argued the cause amicus curiae for The National Right to Work Legal Defense Foundation (Messrs. Apruzzese & McDermott, attorneys; Mr. Rex H. Reed, Legal Director; Mr. Vincent J. Apruzzese, of counsel).
The opinion of the court was delivered by HANDLER, J.S.C., Temporarily Assigned.
Plaintiff New Jersey Turnpike Employees' Union, Local 194, of the American Federation of Technical Engineers (Union) appeals from an adverse decision on the validity of an agency shop clause in a contract with defendant New Jersey Turnpike Authority (Authority). On March 5, 1970, the New Jersey Public Employment Relations Commission certified plaintiff union as the majority representative of the employees of defendant Authority. Thereafter, the union and the Authority engaged in collective bargaining negotiations and on August 12, 1970 entered into a collective bargaining agreement.
Article VI-D of that collective bargaining agreement contains the following language:
The Authority and Union agree to file a complaint seeking a "Declaratory Judgment" before a court of competent jurisdiction to determine the legality of an "Agency Shop" provision. Should such a provision be declared legal then Agency Shop shall be effective on the first day of the month of the second month succeeding the date of the decision.
Pursuant to this provision, the union filed such an action and proposed that, if its suit were successful, the following agency shop arrangement be added to the collective bargaining agreement:
It is therefore agreed that it is a condition of employment or continued employment that commencing on the thirtieth day following the initial employment of any employee covered by this agreement, all employees shall pay to the union an amount, equal to the amount of the regular dues of the union, plus an amount equal to the regular initiation fee of the union, and that failure to make such payments *464 during the month when the same is due shall constitute good cause for, and require separation from employment. It is further agreed that all funds paid to the Union by or on behalf of persons not members of the union because of this agreement shall be used exclusively to defray the costs of collective negotiations, the negotiation and adjustment of grievances with the Authority and other expenses relating to the representation of such persons. Should it be determined that the funds thus paid by said non-members exceed their fair share of such expenditures, it is agreed that adjustments in said amount of initiation fee and/or dues shall be made to eliminate such excess.
On motion for summary judgment the court below declared the above provision invalid because it was contrary to the New Jersey Employer-Employee Relations Act, L. 1968, c. 303; N.J.S.A. 34:13A-1 et seq.
On this appeal the union urges that the proposed agency shop is valid and does not violate any constitutional or statutory stricture and is consistent with public policy. The Authority contends in effect that any agency shop arrangement would be contrary to the specific provisions of N.J.S.A. 34:13A-5.3 which confers the right upon individual employees to desist from union activity; that it would violate the constitutional guarantee to employees of the right to process their grievances individually or through their representatives, and that the proposal would also be at variance with statutory restrictions applicable to the hire of veterans and is otherwise illegal by compelling dues deduction; also, such a provision is not justified by considerations of equity.
An agency shop has been defined as an arrangement whereby, as a condition of continued employment, all employees not already members of the union and new employees hired thereafter must pay to the union, within a stated time after agreement or initial employment, a sum equal to the initiation fees charged to members of the union and monthly sums equal to regular membership dues required of members. Hopfl, "The Agency Shop Question," 49 Cornell L.Q. 478 (1964). Focusing upon the constitutional argument, the Authority contends that an agency shop is in direct conflict with N.J. Const. (1947), Art. I, par. 19. This provides:
*465 Persons in private employment shall have the right to organize and bargain collectively. Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing.
More pointedly, it is asserted that the proposed agency shop requires payments by nonmember employees for the purpose of defraying the union's expenses incurred for the processing of grievances. This, it is suggested, is at war with the constitutional right in public employees to process grievances individually or through their designated representatives. The thesis seems to be that under an agency shop non-union employees would either be compelled to forfeit this right to handle their own grievances or be discouraged in the exercise thereof. The argument is tendered notwithstanding judicial recognition that the constitutional guarantee does not confer the right upon individuals to bargain or negotiate terms and conditions of employment. Lullo v. International Ass'n of Fire Fighters, 55 N.J. 409 (1970). Nor do we perceive that it affirmatively confers such a right to process grievances, at least where an employee representative has been duly elected for that purpose by a majority of employees.
The trial court properly rejected this constitutional attack:
To interpret the constitutional language in Art. 1, par. 19, to bar individual public employees from presenting proposals as to terms and conditions of employment whenever there is a majority representative, but to safeguard their right to present grievances under all circumstances would be to create a dichotomy between "grievances" and "proposals" which has no basis in constitutional history or otherwise. [117 N.J. Super. at 351]
It may be noted that the Public and School Employees Grievance Procedure Study Commission, in proposing comprehensive legislation to govern public employment, recommended a rule which would recognize individual or minority handling of grievances. The Commission proposed:
*466 When a majority of employees in a given negotiating group or unit indicate by secret election a preference for a specific representative organization, no other organization should be designated, certified, or recognized for the purpose of collective negotiations, but this should not preclude an employee's right to process grievances individually. [Report, p. 22, par. (c)]
The Legislature, in the adoption of the New Jersey Employer-Employee Relations Act, apparently adopted a different tack. N.J.S.A. 34:13A-5.3 provides:
Nothing herein shall be construed to prevent any official from meeting with an employee organization for the purpose of hearing the views and requests of its members in such unit so long as (a) the majority representative is informed of the meeting; (b) any changes or modifications in terms and conditions of employment are made only through negotiation with the majority representative; and (c) a minority organization shall not present or process grievances. * * * [Emphasis added]
It is only
[w]hen no majority representative has been selected as the bargaining agent for the unit of which an individual employee is a part, [that] he may present his own grievance either personally or through an appropriate representative or an organization of which he is a member and have such grievance adjusted. [Ibid.]
There are cogent reasons sounding in public policy why the majority representative of a unit of public employees should be authorized to act as the sole or exclusive representative on behalf of all employees in the handling of grievances. As mentioned in Lullo, exclusivity in the processing of grievances is conducive to greater stability and minimizes unrest; individual employees secure greater leverage vis-a-vis their governmental employer and administrative efficiency is enhanced. Moreover, the responsibility is crystallized in the elected majority representative to process grievances in good faith without discrimination and with the same measure of devotion to dissident employees as it owes to its own constituents. Lullo v. International Ass'n of Fire Fighters, supra, 55 N.J. at 433-435. Cf. *467 Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); N.L.R.B. v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967)
We conclude that employees do not have a right of constitutional dimension to process their own grievances individually or through a minority representative organization. Therefore, the proposed agency shop provision, to the extent it contemplates payments by nonunion members for the purpose of defraying their pro rata share of the union's expenses attendant upon the collective processing of grievances on behalf of all employees, does not suffer from any constitutional infirmity.
The Authority further contends that the proposed agency shop is contrary to the New Jersey Employer-Employee Relations Act and, in particular, the so-called "right-to-work" provision found in the introductory language of N.J.S.A. 34:13A-5.3, viz:
Public employees shall have, and shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist any employee organization or to refrain from any such activity.
A majority of states have provided for collective bargaining in one form or another on behalf of governmental employees. Most legislation which affords such an employee the right to join or associate with a union for the purpose of collective negotiation also protects the right to refrain from forming or joining a union. Four states  including New Jersey  go so far as to vindicate the right in an employee to refrain from assisting a public employee organization or union. Comment, "Impact of the Agency Shop on Labor Relations in the Public Sector," 55 Cornell L. Rev. 547, 557-558 (1970).
The trial court, in rejecting the union's contentions, determined that the proposed agency shop would be contrary to the New Jersey right-to-work statute. It reasoned:
*468 Realistically there can be minimal doubt about the consequences of an agency shop. Defendant's employees, who are not now members of plaintiff union, would join it if faced with assessments identical to union dues and initiation fees, except, it may be, for a recalcitrant handful.
The court will not compel that result in view of the legislative declaration of the right of public employees to refrain from union activity, even assisting a union, and in the absence of legislative authorization for an agency shop in public employment. [117 N.J. Super. at 352]
Much of the decisional law in the area would support this result. Representative cases have held that where there is a constitutional or statutory confirmation of a right in public employees to refrain from joining or participating in an employee organization or to desist from organizational activities, the imposition of an agency shop applicable to nonmembers is invalid. E.g., Farrigan v. Helsby, 68 Misc.2d 952, 327 N.Y.S.2d 909 (Sup. Ct. 1971); Schermerhorn v. Local 1625 of Retail Clerks Int. Ass'n, 141 So.2d 269 (Fla. Sup. Ct. 1962), aff'd 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963); Higgins v. Cardinal Mfg. Co., 188 Kan. 11, 360 P.2d 456 (Sup. Ct.), cert. den. 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961); Baldwin v. Arizona Flame Restaurant, 82 Ariz. 385, 313 P. 2d 759 (Sup. Ct. 1957); cf. Benson v. School Dist. No. 1 of Silver Bow City, 136 Mont. 77, 344 P.2d 117 (Sup. Ct. 1959). Correlatively, the absence of any constitutional or statutory protection or any definitive recognition of such a putative right has led some courts to validate an agency shop applicable to governmental employees. E.g., Russell v. Bureau of Unemployment Compensation, 25 Ohio St.2d 73, 266 N.E.2d 844 (Sup. Ct. 1971); semble, Smigel v. Southgate Community School District 388 Mich. 531, 202 N.W.2d 305 (Sup. Ct. 1972); Tremblay v. Berlin Police Union, 108 N.H. 416, 237 A.2d 668 (Sup. Ct. 1968); Amalgamated Ass'n v. Las Vegas-Tonopah-Reno Stage Lines, 202 F. Supp. 726 (D. Nev. 1962); cf. Meade Electric Co. v. Hagberg, 129 Ind. App. 631, 159 N.E.2d 408 (App. Ct. 1959); also Note, 14 Wayne L. Rev. 1238 (1968).
*469 The numerous cases treating the problem are not amenable to ready synthesis. They reflect diverse approaches taken in various jurisdictions and accordingly range a broad philosophical spectrum on the complex issue of employee organizational security. Compare N.L.R.B. v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963) with Retail Clerks Int. Ass'n v. Schermerhorn, 373 U.S. 746, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). A predicate to most commentary upon the propriety of the agency shop in the public sector is the acknowledged duty of a public employees' organization, acting as an exclusive representative, to conduct itself fairly and without discrimination on behalf of all employees, members and nonmembers alike. Lullo v. Intern. Ass'n of Fire Fighters, supra. Thus, where the manifest purpose and practical effect of an agency shop is to distribute among all employees in some equitable fashion the organization's costs for benefits conferred in representing employees, and in that manner to eliminate the so-called "free ride" which would otherwise be enjoyed by nonmember employees, the validity of such a technique has been acknowledged. Town of North Kingston v. North Kingston Teach. Ass'n, R.I. 297 A.2d 342 (Sup. Ct. 1972) (noting in particular the agency shop proposed here by the union, 297 A.2d at 346, fn. 9). Nevertheless, in pursuing what might otherwise be considered the legitimate objective of eradicating the "free ride," an employee's organization should not be permitted to impose what is tantamount to a "forced journey" upon nonjoiners. Retail Clerks Int. Ass'n v. Schermerhorn, supra, 373 U.S. at 752-754, 83 S.Ct. 1461; cf. Board of School Dir. v. Wisconsin Emp. Rel. Comm'n, 42 Wis.2d 637, 168 N.W.2d 92, 97-98 (Wis. Sup. Ct. 1969).
The validity of the agency shop proposition must be gauged by the New Jersey statute, N.J.S.A. 34:13A-5.3. This, in clear terms, confirms a right in public employees not only to refrain from activity in the nature of forming or joining an employee organization but also to refrain from *470 assisting such an organization. The agency shop arrangement suggested herein does purport to relate the payments to be made by nonmembers to the union's expenses for collective negotiations and the handling of grievances. But it also mandates that payments to the union by nonmember employees are a condition of employment; the amount of such payments is the exact equivalent of initiation fees and regular dues, and failure to pay results in discharge. These clauses, though counterpoised with those which purport to relate such payments to union expenses, would have the predominant effect of inducing, if not compelling, union membership, participation and assistance on the part of nonmember employees. The court below, in our view, correctly determined that this proposed agency shop was invalid as contrary to N.J.S.A. 34:13A-5.3.
The result reached herein obviates consideration and disposition of other contentions.
Affirmed.