Elaine ALVINI, Peggy A. Beers, Blair Benson, Eleanor S. Bentz, Susan Cannon, Delores W. Chappell, Beverly Clark, Hilda A. Craig, Gloria J. Diggs, June E. Dixon, Emma L. Fowler, Elizabeth Grier, Lorraine E. Hand, Joyce Hatfield, Rose M. Henderson, Connie Hicks, Margaret A. Hinson, Joanne M. Hopkins, Shirley A. Hurd, Roberta Krieg, Carol A. Lopez, Mary Rae Mahoney, Laura H. Mathis, Elvinia Moody, Mary M. Pollard, Janet M. Reed, Cathy L. Reese, Marjorie Rodriguez, Irene Schorah, Gladys Skrzec, Lubomira Szeremeta, Patricia A. Till, Doris Wilmer, Rosalie Wilson, and Catherine J. Zimmerman, Plaintiffs,

v.

COLONIAL SCHOOL DISTRICT, Colonial Paraprofessional Association and Colonial Food Service Workers Association, Defendants, (Respondents Below),

Public Employment Relations Board, Defendant (Agency Below).

Civ. A. No. 13019.

Court of Chancery of Delaware, New Castle County.

Submitted: Nov. 10, 1993.
Decided: Dec. 7, 1993.

Earl Christensen, Bear, John C. Scully, Springfield, VA, for plaintiffs.

Sheldon N. Sandler and Omar Y. McNeill, Young, Conaway, Stargatt & Taylor, Wilmington, for defendants.

ALLEN, Chancellor.

Pending is an appeal from a decision of the Public Employee Relations Board ("PERB") dismissing an unfair labor practice complaint filed by employees of the Colonial School District against the Colonial Paraprofessional Association and Colonial Food Service Workers Association, each of which are employee bargaining representatives, and Colonial School District. The complaint alleged that a collective bargaining agreement that provides for the compulsory payment of certain fees to the defendant associations by non-member employees violates provisions of the Public School Employment Relations Act ("PSERA"), 14 Del.C. 4001 et seq. (1992 Cum. Supp.). The complaint seeks judicial review of the PERB dismissal of the complaint on June 7, 1993. Plaintiffs appealed the PERB decision to this court within fifteen days of the date upon which the decision was rendered, in conformity with Section 4009(a).[1]

## I.

Plaintiffs are all employees of the Colonial School District ("School District"), and are in bargaining units represented either by the Colonial Paraprofessional Association ("Para-

professional Association") or by the Colonial Food Service Workers Association ("Food Service Workers Association"). Defendants are the School District, the Paraprofessional Association, the Food Service Workers Association, and PERB.[2]

None of the plaintiffs is a member of either Association.[3] On or about September 1, 1990 the School District entered into collective bargaining agreements with each of the Associations. The agreements contain language stating that employees are not required as a condition of employment to join a union or pay a service fee. Stipulation ¶ 4. Nevertheless, the agreements provide for the payment of a service charge (also called agency fee)[4] assessed against nonmembers of the Associations who are included in the bargaining unit as compensation for the fair value of services rendered by the Associations.[5]

## II.

Plaintiffs offer three grounds in support of their claim that the PERB erroneously dismissed their complaint. First, they contend that as a constitutional matter, PSERA must be read implicitly to forbid all agency fees because requiring their payment impinges on First Amendment rights of association.

Second, plaintiffs claim that contract provisions requiring employees to pay service fees violate PSERA. It is claimed that mandatory agency fees unlawfully encourage mem-

---

1. It should be noted that plaintiffs are defendants in a case filed on April 1, 1992 by the Associations, currently pending in the Superior Court, to collect fees for the 1990–91 school year. See Colonial Food Serv. Ass'n v. Cannon, C.A. No. 92C–04–005.

2. According to the defendant Associations' brief, the School District and PERB have chosen not to participate in the matter further. DAB at 2.

3. The parties agreed that the plaintiffs are "public school employees" under § 4002(m), Colonial School District is a "public school employer" under § 4002(n), and the Associations are "exclusive bargaining representatives" under § 4002(i).

4. This type of service charge provision is known as a union security clause, in that it protects unions from competing unions and prevents rep-

resentation of nonmembers without payment for services rendered. See D App. 4 at 29 (excerpt from Linda Hsu, The Regulation of Public Sector Bargaining: The Delaware Experience, 1976).

5. The agreements provide in pertinent part:

3:1 The Board and Association agree that there shall be no obligation for bargaining unit employees to join the Union or to pay a representative fee as a condition of employment or continued employment. However, the Board does recognize the Association's claim that all members of the bargaining unit, even those that are not members of the Association, have a responsibility to pay fair value for services rendered on their behalf by the Association ... for their proportionate part of the cost of collective bargaining, grievance adjustment, and other duties and services related to being exclusive representative.

bership in unions, and provide assistance to them.

Lastly plaintiffs argue that even if the Delaware statute does not guarantee a right to work without payment of agency fees, then at least the plaintiffs who are paraprofessionals are included in PSERA language exempting "certified professional school employees" from the requirement to pay service fees.

### A.

■ (1) I address first plaintiffs' argument that mandatory service fees violate First Amendment rights of free association because the State must have, but lacks, a compelling interest to justify this payment. The United States Supreme Court has held that collective bargaining agreement provisions mandating payment of service fees to a union representing public employees do not violate the First Amendment's guarantee of freedom of association. In *Abood v. Detroit Bd. of Education,* 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977) the Supreme Court recognized that although payment of a service fee impacts employees' First Amendment interests, those effects can be justified by the benefits derived from the payments, namely "labor peace" and the discouragement of free-riding in the collective bargaining process. *Id.* at 220–224, 97 S.Ct. at 1791–93. Justice Stewart wrote:

> To be required to help finance the union as a collective-bargaining agent might well be thought ... to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit. But the judgment clearly made in [*Machinists v. Street,* 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) and *Railway Employees' Dep't v. Hanson,* 351 U.S. 225, 237, 76 S.Ct. 714, 721, 100 L.Ed. 1112 (1956) (finding no violation of First Amendment where financial support of union was required) ] is that such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress.

*Id.* at 222, 97 S.Ct. at 1793 (footnote omitted). In *Chicago Teachers Union Local No. 1 v. Hudson,* the Supreme Court restated its rejection of the claim that it is "unconstitutional for a public employer to designate a union as the exclusive collective-bargaining representative of its employees, and to require nonunion employees as a condition of employment to pay a fair share of the union's cost of negotiating and administering a collective bargaining agreement." 475 U.S. 292, 302, 106 S.Ct. 1066, 1073, 89 L.Ed.2d 232 (1986).

In this case, plaintiffs are required to pay a service fee that is justified as covering a part of the costs of collective bargaining and the administration of the grievance process. That service fee is just over 50% of total union dues.[6] Insofar as plaintiffs have not alleged that the fees constitute compulsory subsidies of non-collective bargaining activities of the defendants, and since the payment of a service fee to cover collective bargaining costs has passed constitutional muster, plaintiffs' basic First Amendment argument must fail. PERB did not err in affirming the Executive Director's decision that the employees' rights under the United States Constitution were not unlawfully abridged by permitting the assessment of a service fee.

(2) Plaintiffs further claim that a close reading of PSERA reveals that it *implicitly* guarantees employees a right to work without paying any agency fee. In pertinent part, the statute grants to public school employees the right to:

> (1) Organize, form, join or assist any employee organization, provided that membership in, or an obligation resulting from collective bargaining negotiations to pay any dues, fees, assessments or other charges to an employee organization shall not be required as a condition of employment for certified professional school employees.

14 *Del.C.* § 4003(1). Plaintiffs claim that a right to "[o]rganize, form, join or assist," implicitly includes the right to refrain from such activities. 14 *Del.C.* § 4003(1). Manda-

---

**6.** For the full union dues employees may also receive, for example, additional health insurance options, membership in a credit union, the right to vote at union elections and so forth.

tory payment of service fees effectively eliminates the employee's right to refrain, claim plaintiffs, because the fee payment compels membership or at least assistance from an unwilling participant.

Prior decisions of Delaware courts have held that Delaware does not prohibit agency shop arrangements and that unions may sue to collect service fees. Delaware has not enacted a "right-to-work" statute as some states have, nor does PSERA include "right to refrain" language that guarantees a right to work without mandatory payment of union service fees. In *Colonial Food Service Workers v. Hicks,* Judge Babiarz found that Delaware law does not prohibit the compulsory payment of an agency fee, notwithstanding the courts' and legislature's virtual silence on the issue. *Colonial Food Serv. Workers Ass'n v. Hicks,* C.A. No. 90C–FE–63, 1992 WL 52220, Babiarz, J. (Feb. 19, 1992). In a predecessor case to *Hicks,* this court held that the Association could seek payment through a suit to collect the fees, and recognized in dicta that courts "have consistently upheld the legality of representation fees to be paid by non-members of a union...." *Colonial Food Serv. Workers Ass'n v. Colonial Sch. Dist. Bd. of Educ.,* C.A. No. 8269, 1987 WL 18431, Hartnett, V.C., slip op. at 8–9 (Oct. 8, 1987).

In reaching its decision in *Hicks* the Superior Court considered those same cases from other jurisdictions as are urged by the parties here. The two foremost cases reach opposite results primarily because New Jersey has a right-to-work statute, whereas Indiana, like Delaware, does not. In *Fort Wayne Education Ass'n, Inc. v. Goetz,* an Indiana court of appeals found that the statute at issue, because it lacked an explicit right to refrain provision, permitted any requirements of employees short of union membership.[7] Ind.Ct.App., 443 N.E.2d 364, 371 (1982). The *Fort Wayne* court specifically noted that Indiana's legislature had repealed a statute with right to refrain language, and that the only action which could constitute an unfair labor practice was compulsory union membership. *Id.* The court found that an agency shop provision in a collective bargaining agreement was valid. *Id.* at 373.[8]

In contrast, the New Jersey Supreme Court affirmed the Superior Court's holding that a proposed agency shop clause in a collective bargaining agreement would be in violation of the New Jersey right-to-work statute. *New Jersey Turnpike Employees' Union, Local 194 v. New Jersey Turnpike Auth.,* N.J.Super.Ct.App.Div., 123 N.J.Super. 461, 303 A.2d 599, 603 (1973), *aff'd,* N.J.Supr., 64 N.J. 579, 319 A.2d 224 (1974).[9] The New Jersey Superior Court reasoned that agency shop members are invalid as to public employees "where there is a constitutional or statutory confirmation of a right ... to refrain from joining or participating in an employee organization." *Id.* Nevertheless, it recognized other courts' holdings validating agency shop provisions in the absence of "any definitive recognition of such a putative right." *Id.* at 604. Important to that court's

---

**7.** The Indiana statute contains language substantially similar to 14 *Del.C.* § 4003(1) with regard to the right to form, join or assist employee organizations, and with regard to the lack of right to refrain language.

**8.** Plaintiffs also point to another case, not considered by Judge Babiarz, in which the statute at issue did not include right-to-work language but the court held nevertheless that the agency shop provision of a collective bargaining agreement was invalid. *Churchill v. S.A.D. No. 49 Teachers Ass'n,* Me.Supr., 380 A.2d 186 (1977). It is significant that *Churchill* goes against the bulk of the decisions where the statute has no right-to-refrain language, and that the agency fees required in that case *were equal to union dues. Churchill,* 380 A.2d at 188. The court qualified its opinion: "We do not intimate what our deci-

sion would be if the so-called 'agency shop' clause in the instant case had required nonjoinder employees to pay to the bargaining agent only their proportionate share of the costs of securing the benefits conferred upon all the members of the bargaining unit." *Id.* at 192 n. 5.

**9.** The New Jersey statute provides in pertinent part, and in contrast to PSERA:

Public employees shall have, and shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join and assist any employee organization *or to refrain from any such activity.*

*New Jersey Turnpike,* 303 A.2d at 603 (quoting N.J.S.A. 34:13A–5.–3) (emphasis added), *aff'd,* N.J.Supr., 64 N.J. 579, 319 A.2d 224 (1974).

decision was in fact that the fees exacted from nonunion employees were exactly equivalent to regular union dues and initiation fees. *Id.* Given the dissimilarity between New Jersey's and Delaware's statutes, our Superior Court declined to follow the New Jersey precedent. *Hicks,* C.A. No. 90C–FE–63, Babiarz, J., slip op. at 5 (Feb. 19, 1992).[10]

An examination of PSERA's legislative history confirms that the statute intends for all employees other than "certified professional employees," to be subject to a negotiated obligation to pay service fees. Effective July 18, 1990, the Delaware General Assembly shifted jurisdiction of nonprofessional school employees from 19 *Del.C.* Chapter 13 to 14 *Del.C.* Chapter 40. 67 Del. Laws, c. 404. In doing so, the legislature inserted language specifically exempting certified professionals from service fees, but made no statements regarding nonprofessionals. The synopsis attached to the bill explains that the insertion is intended to "maintain[ ] the status quo for locally bargaining union security and fair share provisions." *Id.* at 2. This legislative history confirms that PSERA, as amended, was intended to preserve the potential assessment of service fees from all public employees except certified professionals.

■ Based on Judge Babiarz's decision in *Hicks,* and on the similarity of the Delaware statute to the language of the Indiana statute at issue in *Fort Wayne,* as well as the legislative history of PSERA, I am of the opinion that, excepting certified professional employees, the Act does not implicitly guarantee to public school employees a right to work free of the obligation to pay their fair share of the costs associated with the collective bargaining process. PERB did not err in affirming the Executive Director's decision on this point.

(3) The next question to be considered is whether PSERA *explicitly* prohibits mandatory service fees since, according to plaintiffs, such a provision in a collective bargaining agreement would constitute an unfair labor practice on two grounds.[11] Plaintiffs argue that compulsory agency fees encourage Association membership in violation of Section 4007(a)(3), and constitute assistance, albeit indirectly, to the Associations by the School District in violation of Section 4007(a)(2).[12]

a.

■ Plaintiffs claim that payment of a mandatory service fee encourages membership in the Associations because mere payment constitutes "membership" and because the fee makes full membership less expensive and thus more likely. In support of their first contention, plaintiffs offered at the PERB hearing the testimony of Professor Craig E. Schneier[13] who expressed the view that even involuntary monetary contribution to an organization constitutes membership. PERB Tr. at 10–12. He conceded that, in his opinion, while payment of a service fee would create membership in a union of a kind, payment of higher union dues would result in "full membership," a higher level of involvement. PERB Tr. at 10–12. Notwithstanding Dr. Schneier's credentials, this court finds it difficult to adopt theories of organizational behavior in construing a stat-

10. This court is more inclined to follow Judge Babiarz's analysis than that of the PERB Executive Director in *Smyrna Educators Ass'n v. Board of Educ.,* Del. PERB, D.S. No. 89–10–046 (reasoning that PSERA, despite lack of "right to refrain" language, nevertheless granted such rights), *reviewed,* A.D.S. No. 89–10–046 (Jan. 25, 1990).

11. Plaintiffs' third argument, that the agency fees provisions constitute an unfair labor practice because they "[i]nterfere with, restrain or coerce any employee in . . . the exercise of any right guaranteed under this chapter," 14 *Del.C.* § 4007(a)(1) is unavailing since I have concluded that PSERA does not guarantee a right to work without payment of an agency fee.

12. Those sections provide:

 (a) It is an unfair labor practice for a public school employer . . . to do any of the following:
 . . . .
 (2) Dominate, interfere with or *assist* in the formation, existence or administration of any labor organization.
 (3) *Encourage or discourage membership* in any employee organization by discrimination in regard to hiring, tenure or other terms and conditions of employment.
14 *Del.C.* § 4007(a)(2), (3).

13. Dr. Schneier holds a doctorate in Organization Theory and Organization Behavior, teaches and consults. PERB Tr. at 2.

ute crafted upon legal rather than behavioral premises. The membership contemplated by the General Assembly in drafting Section 4007(a)(2) is, in my opinion, a legal, formal concept. Such membership is marked by the incidents of membership generally recognized by the organization (e.g., right to vote, right to stand for office). Plainly the payment of services fees does not constitute "membership" in this legal sense.

Plaintiffs further argue that payment of a service fee encourages association membership because the payment of a service fee makes it marginally cheaper for an employee to "buy" the benefits offered by association or union membership. While the logic of this argument is sound, insofar as it goes, it does not go far enough. When considered more fully and in the light of the facts of this case, plaintiffs' claim is seen as properly dismissible by the PERB.

Membership in a union under a legal regime that recognizes the validity of service fees can logically be seen as involving two economic components. The first is the cost of (and benefit of) the collective bargaining activities. The second is the cost of (and benefit of) all of the other social, political and economic activities of the union (such as group insurance benefits; health and welfare services; or political organizing and lobbying). So long as there is, in the fixing of the amount of the agency fee and of union dues, a fair allocation of the costs of the collective bargaining process (so that there is no significant cross-subsidization of the other union activities by the service fee) the requirement of the service fee payment will itself leave individuals indifferent with respect to whether they want to "buy" the second component offered by union membership. In that event, the service fee allows for a fair sharing of costs of the mutually beneficial collective bargaining process but does not encourage union membership.

But where the service fee does not represent a fair allocation of such costs, then it does in effect force non-members to subsidize a part of the other benefits of union membership. In that event, those payments would act as an incentive to join the union in order to realize some of the non-collective bargaining benefits for which payment has already been made.

Thus, in those cases in which courts have held that payment of service fees acted as an impermissible encouragement to join a union, the service fees have been seen as not representing a fair apportionment of the costs incurred through the collective bargaining process. *See, e.g., Smigel v. Southgate Community Sch. Dist.,* Mich.Supr., 388 Mich. 531, 202 N.W.2d 305, 307 (1972) (finding that "[t]here is not even the pretense that the sum to be deducted is a pro rata share of representation expenses"); *City of Hayward v. United Pub. Employees, Local 390,* Cal.Ct. App., 54 Cal.App.3d 761, 126 Cal.Rptr. 710, 714 (1976) (noting that the "forced payment of dues or their equivalent is ... 'participation' in an employee organization"); *Churchill v. S.A.D. No. 49 Teachers Ass'n,* Me.Supr., 380 A.2d 186, 192 & n. 5 (1977); *New Jersey Turnpike Employees' Union, Local 194 v. New Jersey Turnpike Auth.,* N.J.Super.Ct.App.Div., 123 N.J.Super. 461, 303 A.2d 599, 604 (1973), *aff'd,* N.J.Super., 64 N.J. 579, 319 A.2d 224 (1974).

There is here no claim that the service fees represent an unfair allocation of costs incurred by reason of the Associations' role as collective bargaining agents. Given the fact that there is a very substantial difference between the amount of Associations' dues and the service fee, any such claim would be difficult (i.e., at least laborious) to prove. In all events it was not alleged or proven below. In the absence of such cross-subsidization it cannot be said that compulsory payment of service fees encourages membership in the Associations.

b.

 It is next argued that the service fees constitute indirect and unlawful assistance to the Associations, and thus amount to an unfair labor practice in violation of Section 4007(a) (*see* n. 12 *supra*). This argument is, in effect, that PSERA forbids service fee provisions. It is inconsistent with the holding of the Superior Court in *Hicks, supra,* of this court in *Colonial Food Serv. Workers, supra,* and the legislative history cited above.

Thus, in my opinion, PERB properly affirmed the Executive Director's decision that the terms of the collective bargaining agreements at issue authorizing service fees were not unfair labor practices in that they did not encourage membership in the Associations, nor did they provide unlawful assistance, in violation of Section 4007(a)(2) and (3).

### B.

Finally, plaintiffs assert that even if PSERA does not implicitly guarantee to all public school employees a right to work free of an obligation to pay service or agency fees to a union, it does at least prohibit the assessment of such fees against the plaintiffs who fall into the bargaining unit represented by the Paraprofessional Association because such persons are, they say, "certified professional school employees" within the meaning of Section 4003(1). PSERA does not define the term "certified professional school employee" used in the exception provided by Section 4003(1).

The plaintiffs who raise this argument are teachers' aides, playground attendants, and school bus personnel. They have been issued permits by the Delaware Department of Public Instruction ("DPI"), which permits state, in part, that the recipient has fulfilled the requirements "of the rules and regulations ... for the certification of Professional School Personnel."

At the hearing before the PERB, defendants offered the testimony of Ms. Budna, Supervisor for Certification of DPI, who explained that the certification process for teachers and counselors differs significantly from that for aides. Whereas DPI requires proof of at least a bachelor's degree, either directly from the teacher or indirectly from the hiring district, no proof of a college or any other degree is required of aides. Districts simply submit the names of aides that they hire, along with proof that they are of a certain age. DPI then issues a permit without further investigation. PERB Tr. at 14–18. The words on the permit to which plain-

tiffs refer have no operational effect in the functioning of DPI. Ms. Budna testified that these paraprofessionals are not in any way treated as "certified professionals" by her office.

▰▰▰▰ The meaning of the statutory exclusion is a question of law for the court. While the views of the agency with primary responsibility for administration of the work regulated by the statute will be given weight and consideration in this interpretive task, it cannot be the final word. I accept Ms. Budna's testimony that DPI does not regard these employees as certified professionals. In all events, affording to the standard English words employed in Section 4003(1) their usual and customary meaning, I could not conclude that these plaintiffs, as useful and important as their tasks no doubt are, are professional employees. They have neither the specialized education or the other attributes that the word professional generally imports.

Since I do conclude that the aides are not excluded professional employees (certified or otherwise), it is unnecessary to determine plaintiffs' complaint that the payment of agency or service fees constitutes a "condition of employment," even though Section 3.1 of the collective bargaining agreement says it does not. *See* n. 5 *supra.*

\* \* \*

Plaintiffs' appeal will therefore be dismissed on the merits. Defendants may submit an implementing form of order on notice.