Hillsborough-southern judicial district
No. 96-263

NASHUA TEACHERS UNION & a.

v.

NASHUA SCHOOL DISTRICT & a.

March 23, 1998

*Krasner Professional Association*, of Farmington (*Emmanuel Krasner* on the brief and orally), for the plaintiffs.

*Brown, Olson & Wilson*, of Concord (*Bryan K. Gould* on the brief), and *National Right to Work Legal Defense Foundation, Inc.*, of Springfield, Virginia (*John C. Scully* orally), for defendant Russell Ober.

*Steven R. Sacks*, of Concord, staff attorney, by brief for NEA-New Hampshire, as *amicus curiae*.

*Cook & Molan, P.A.*, of Concord (*Glenn R. Milner* on the brief), for Professional Firefighters of New Hampshire, as *amicus curiae*.

BRODERICK, J. Defendant Russell Ober appeals an order of the Superior Court (*Hampsey*, J.) holding that compulsory agency fees imposed on non-union public employees pursuant to a collective bargaining agreement are lawful. We affirm.

The plaintiffs, Nashua Teachers Union (NTU) and Hudson Federation of Teachers (HFT), are the exclusive collective bargaining representatives for certain employees of the defendant Nashua and Hudson school districts. Defendant Russell Ober is an employee of the Hudson School District but is not a member of the HFT. Both plaintiffs negotiated collective bargaining agreements (CBAs) with their respective school districts that required all employees in their bargaining units to pay an agency fee to the union, regardless of whether they were union members. Agency fees are assessments that non-union employees pay their collective bargaining representative to defray the costs associated with exclusive representation and collective bargaining. *See State Employees' Ass'n v. Mills*, 115 N.H. 473, 478, 344 A.2d 6, 11 (1975); *Abbott v. State of New Hampshire & a.*, No. 84-22 (PELRB March 9, 1984).

Ober's agency fee was collected by means of involuntary payroll deductions, without his authorization. He challenged the involuntary deductions by filing a wage claim with the department of labor which ruled that such deductions are unlawful. The plaintiffs then filed a joint petition for declaratory judgment with the superior court seeking a ruling that mandatory payment of agency fees is lawful and that involuntary deduction of such fees from wages does not violate State law. The court held that compulsory agency fees negotiated as part of a public sector CBA are lawful but that involuntary payroll deductions as a means of collecting them violated RSA 275:48 (1996). Ober appeals, arguing that (1) compulsory agency fees in the public sector negotiated without explicit statutory authorization violate his rights under the first amendment to the United States Constitution, and (2) imposition of agency fees violates RSA 273-A:5, I(c) (1987) because it "encourages" union membership.

## I

We first address Ober's contention that compulsory agency fees in the public sector not explicitly authorized by statute impermissibly infringe upon his first amendment rights. Ober relies on *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), to argue that the compulsory agency fee provisions in this case are unlawful.

In *Abood*, the Supreme Court examined public sector compulsory agency fees to determine whether they "violate the constitutional rights of government employees . . . ." *Id.* at 211. The issue arose under a Michigan statute that explicitly authorized such fees. *Id.* The Court acknowledged that compelled financial support of an exclusive collective bargaining representative has an impact upon an employee's first amendment interests. *Id.* at 222. The Court held, however, that under the exclusive union representation system of labor relations created by the Michigan legislature, agency fees · could be constitutionally justified by "the legislative assessment" of their importance in promoting labor peace by discouraging "free riding" of non-union employees. *Id.* at 221-25. Although *Abood* involved a state statute that explicitly sanctioned the assessment of agency fees, we do not read *Abood* to limit the counterbalancing "legislative assessment" only to explicit statutory language. *See, e.g., Alvini v. Colonial School Dist.*, 641 A.2d 841, 844-46 (Del. Ch. 1993) (upholding agency fee provision in public sector CBA as constitutional pursuant to *Abood* despite lack of explicit state statute authorizing agency fees), *aff'd*, 645 A.2d 568 (Del. 1994). We interpret *Abood* also to permit agency fees in the public sector where the legislature has implicitly authorized them by statute as part of an overall legislative scheme to promote labor peace through mandatory collective bargaining. Such is the case in New Hampshire.

After examining the statutory scheme of RSA chapter 273-A, its statutory predecessor, and relevant case law, we hold that agency fees are statutorily authorized as a proper subject of negotiation under RSA 273-A:3, I (1987). *See* RSA 273-A:1, XI (1987) (defining "terms and conditions of employment"); *see also Cheever v. Southern N.H. Regional Med. Ctr.*, 141 N.H. 589, 590-91, 688 A.2d 565, 566-67 (1997) ("this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole" (quotations omitted)). Not only are such fees consistent with the legislative purpose of promoting harmonious labor relations through mandatory collective bargaining but they also play a valuable role in ensuring labor peace. *See South Down Recreation*

*Assoc. v. Moran*, 141 N.H. 484, 487, 686 A.2d 314, 316 (1996) ("Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." (Quotations omitted.)). The public interest served by the assessment of agency fees outweighs any infringement they may impose on a public employee's first amendment rights. *See Abood*, 431 U.S. at 221-25. Therefore, negotiated, compulsory agency fees in the public sector are constitutional and may be assessed to finance collective bargaining, contract administration, and grievance adjustment.

■ Under RSA 273-A:3, I, collective bargaining between a public employer and an exclusive representative of an employee bargaining unit is mandatory. The State legislature broadly defined the scope of matters subject to collective bargaining to include "wages, hours and other conditions of employment," RSA 273-A:1, XI, and specifically identified matters it wished to exclude from the collective bargaining process, *see, e.g., id.* ("managerial policy"); RSA 273-A:3, III (1987) (matters concerning policies and practices of merit systems). There is no statutory language excluding agency fees as a proper subject of bargaining. *Cf. Tremblay v. Berlin Police Union*, 108 N.H. 416, 422, 237 A.2d 668, 672 (1968) (upholding union shop clause in CBA because, *inter alia*, no State law prohibited union shops) (decided under prior law); *Town of N. Kingstown v. North Kingstown Teach. Ass'n*, 297 A.2d 342, 345-46 (R.I. 1972) (upholding agency fee provision in CBA despite lack of statute explicitly authorizing agency fees). To the contrary, since agency fees are fairly included in the broad category of "other conditions of employment," the legislature has sanctioned their negotiation in a public sector CBA.

■ Furthermore, interpreting "other conditions of employment" to incorporate agency fees is consistent with the purpose of RSA chapter 273-A to achieve labor peace by requiring collective bargaining between a public employer and an exclusive representative of all employees within a bargaining unit. *See Appeal of Manchester Bd. of School Comm.*, 129 N.H. 151, 153, 523 A.2d 114, 115 (1987) (legislature adopted RSA chapter 273-A pursuant to "the policy of the state to foster harmonious and cooperative relations between public employers and their employees and to protect the public by encouraging the orderly and uninterrupted operation of government"); *Appeal of Franklin Education Assoc.*, 136 N.H. 332, 335-36, 616 A.2d 919, 921 (1992) (public employer's direct negotiation with individual employees thwarts purpose of exclusive collective bar-

gaining representation under RSA chapter 273-A); *cf.* RSA 273-A:3, I. An exclusive representative certified under RSA 273-A:8 (1987) has a duty to represent all employees within the bargaining unit fairly without regard to whether any employee is a union member. *See* RSA 273-A:3, I, :11, I (1987); *cf. Machinists v. Street*, 367 U.S. 740, 761 (1961) ("a union's status as exclusive bargaining representative [under the Railway Labor Act] carries with it the duty fairly and equitably to represent all employees of the craft or class, union and nonunion"). In turn, the employees, including non-union employees, are bound to accept the benefits bargained for on their behalf. *See* RSA 273-A:11, I; *cf. Appeal of Franklin Education Assoc.*, 136 N.H. at 335-36, 616 A.2d at 921. Labor peace is enhanced by providing employees with a single voice when bargaining with their employer, and by eliminating the burden on the employer of facing conflicting demands from various employees within a single working unit. *Cf. Abood*, 431 U.S. at 220-21.

"The tasks of negotiating and administering a collective-bargaining agreement and representing the interests of employees in settling disputes and processing grievances are continuing and difficult ones . . . [and] often entail expenditure of much time and money." *Id.* at 221. Absent agency fees, non-union employees receive the benefits of improved employment terms and conditions resulting from mandatory collective bargaining without paying the associated costs incurred to achieve such benefits. *See Mills*, 115 N.H. at 478, 344 A.2d at 11; *cf. Abood*, 431 U.S. at 221-23. These "free riders" could disrupt labor peace. *See Abood*, 431 U.S. at 221-23; *cf. Mills*, 115 N.H. at 478, 344 A.2d at 11; *Town of N. Kingstown*, 297 A.2d at 344-46 (holding that, despite public school teacher's right-to-work provision in state statute and lack of explicit language permitting agency fees in that statute, compulsory agency fees are consistent with preventing incentive to be "free rider" in light of mandatory collective bargaining). We hold that where collective bargaining is mandatory, it would be manifestly inequitable to permit those who decide not to join a union to receive the benefits of a negotiated CBA without allowing a public employer and exclusive bargaining representative to impose agency fees.

Moreover, the public employee labor relations board (PELRB), which has jurisdiction to determine unfair labor practice charges under RSA 273-A:6, I (Supp. 1996), has long held that agency fees are a permissible subject of a CBA. *See State Employees' Ass'n v. Plymouth State College & a.*, No. 77-19 (PELRB July 11, 1977). The legislature has not enacted legislation to correct any perceived

misperception by the PELRB regarding agency fees as a permissive subject of collective bargaining under RSA chapter 273-A.

■ Accordingly, we hold that the legislature statutorily authorized agency fees as a subject of collective bargaining by broadly defining "terms and conditions of employment" in light of its purpose to promote labor peace through mandatory collective bargaining. To be valid under the first amendment of the Federal Constitution, however, agency fees must be tailored and used solely to finance the cost of negotiating and administering the CBA and associated grievance procedures. *See Lehnert v. Ferris Faculty Assn.*, 500 U.S. 507, 519 (1991); *see also Abood*, 431 U.S. at 233-37. In addition, a non-union employee cannot be required to contribute to a union's political or ideological activities. *See Lehnert*, 500 U.S. at 519-22; *Abood*, 431 U.S. at 234-36. Moreover, non-union employees cannot be required to pay more than a fair portion of the costs associated with the benefits achieved by collective bargaining; otherwise, union members would be "free riding." *See Town of N. Kingstown*, 297 A.2d at 346.

## II

Ober next argues that compulsory agency fees are expressly prohibited by RSA 273-A:5, I(c) because they "encourage" union membership, an unfair labor practice. RSA 273-A:5, I(c) prohibits public employers from "discriminat[ing] in the hiring or tenure, or the terms and conditions of employment of its employees for the purpose of *encouraging* or discouraging membership in any employee organization." (Emphasis added.)

Ober relies upon language in the National Labor Relations Act (NLRA) and other state statutes to assert that RSA 273-A:5, I(c) is a right-to-work statute. *See, e.g.,* 29 U.S.C. § 157 (1995); *Ficek v. International Bro. of Boilermakers, etc.*, 219 N.W.2d 860, 872-73 (N.D. 1974); *Churchill v. S.A.D. No. 49 Tchrs. Ass'n*, 380 A.2d 186, 192 (Me. 1977); *Smigel v. Southgate Community School District*, 202 N.W.2d 305, 307-08 (Mich. 1972). We are unpersuaded by foreign statutory schemes with language that significantly differs from RSA chapter 273-A and by foreign case law with facts that significantly differ from the case before us.

■ The legislature repealed RSA chapter 98-C in 1975 and replaced it with RSA chapter 273-A. Similar to RSA chapter 273-A, former RSA chapter 98-C mandated collective bargaining between public employers and representatives of employee organizations,

and mandated employers to take action to assure that "no interference, restraint, coercion or discrimination is practiced . . . to discourage or *encourage* [union] membership," RSA 98-C:2 (Supp. 1973) (emphasis added). RSA 98-C:2, however, also declared that employees had the right, "without fear of penalty or reprisal, to form, *join and assist* any employee organization, or to *refrain from any such activity*." (Emphasis added.) When enacting RSA chapter 273-A and repealing RSA chapter 98-C, the legislature chose to exclude this provision. In so doing, the legislature eliminated the classification of New Hampshire as a right-to-work State, as well as the prohibition on agency fees. *Cf. Wolfeboro Camp School v. Town of Wolfeboro*, 138 N.H. 496, 499, 642 A.2d 928, 930 (1994) (language in repealed statute that was specifically excluded in new statute may be indicative of legislative intent to eliminate prior limitation); *Mills*, 115 N.H. at 478-79, 344 A.2d at 11 (holding that "join and assist" language of former RSA 98-C:2 indicated that New Hampshire was a right-to-work State, thus precluding employers from imposing agency fees on non-union employees).

In *Mills*, we determined that an agency shop agreement could not co-exist with the right-to-work provision provided in former RSA 98-C:2. *Mills*, 115 N.H. at 479, 344 A.2d at 11. We specifically relied upon the "join *and assist*" language of RSA 98-C:2 to conclude that the legislature intended to outlaw agency shops because compulsory fees effectively required non-union employees to "assist" unions. *See id.* We did not, however, rely upon the "encourage" language of RSA 98-C:2 — language similar to the current RSA 273-A:5, I(c) — to support the conclusion that agency fees were statutorily prohibited. *See id.* As we did not interpret the prohibition in RSA 98-C:2 against "encouraging" union membership to preclude agency fees in *Mills*, we do not construe the similar prohibition in RSA 273-A:5, I(c) to preclude agency fees. Moreover, the PELRB has held that agency fees are not prohibited by RSA 273-A:5, I(c) as "encouraging" union membership. *See Abbott v. State of New Hampshire & a.*, No. 84-22 (PELRB March 9, 1984).

Ober lastly argues that because agency fees are "typically" high and it is only marginally more expensive to pay for union membership, non-union employees are effectively encouraged to join the union and receive the additional benefits reserved for union employees. We disagree.

As a general rule, union membership involves two financial components. *See Alvini*, 641 A.2d at 847. First, union members must pay for the cost and benefits associated with the collective bargain-

ing process, and second, union members must pay for "all of the other social, political and economic activities of the union . . . ." *Id.* When agency fees are fairly allocated to the costs and benefits of collective bargaining, non-union employees have the option to pay for the additional benefits afforded by union membership. It is only when agency fees are not fairly allocated that non-union employees are effectively forced to subsidize union activities, and in such cases agency fees might well act as an incentive to join the union to secure its benefits. Thus, agency fees must always be less than union dues.

Accordingly, we hold that RSA 273-A:5, I(c) does not prohibit agency fees provided that such fees are tailored to non-union employees' pro rata share of the cost of collective bargaining, contract administration, and grievance adjustment.

*Affirmed.*

BROCK, C.J., and THAYER, J., dissented; the others concurred.

BROCK, C.J., and THAYER, J., dissenting: The majority concludes that although there is no explicit legislative authorization, the absence of agency fees from the list of unfair labor practices indicates the legislature's intention to allow such fees. In addition, the majority interprets the statutory phrase "other conditions of employment" to implicitly include agency fees. We respectfully disagree. Although this court acts as "the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole," *Cheever v. Southern N.H. Regional Med. Ctr.*, 141 N.H. 589, 590-91, 688 A.2d 565, 566-67 (1997) (quotation omitted), "we will not consider what the legislature might have said," *Appeal of Zimmerman*, 141 N.H. 605, 611, 689 A.2d 678, 683 (1997) (quotation omitted), or decide questions of policy, *Smith v. Am. Employers' Ins. Co.*, 102 N.H. 530, 534, 163 A.2d 564, 568 (1960). *But see Petition of Chapman*, 128 N.H. 24, 31, 509 A.2d 753, 758 (1986) (when exercising "its inherent constitutional power to regulate the practice of law," court has "greater freedom" in policymaking).

As noted by the majority, the United States Supreme Court has stated that "[t]o compel employees financially to support their collective-bargaining representative has an impact upon their First Amendment interests," *Abood v. Detroit Bd. of Education*, 431 U.S. 209, 222 (1977), and that requiring non-union employees to pay agency fees is "a significant impingement on First Amendment rights," *Ellis v. Railway Clerks*, 466 U.S. 435, 455 (1984). In light of the constitutional right implicated by the imposition of agency fees and the absence of explicit legislative authorization, we will not

guess "what the legislature might have intended," *Dionne v. City of Manchester*, 134 N.H. 225, 227, 589 A.2d 1016, 1017 (1991) (quotation omitted), or "add words that the legislature did not see fit to include," *Cheever*, 141 N.H. at 592, 688 A.2d at 567. Instead, we believe that this is a matter for "legislative assessment rather than for determination by judicial fiat," *Am. Employers Ins. Co.*, 102 N.H. at 536, 163 A.2d at 569 (Kenison, C.J., dissenting), and decline to interpret the legislature's silence on this issue as implicitly authorizing agency fees, *cf. Lakin v. Daniel Marr & Son Co.*, 126 N.H. 730, 732-33, 495 A.2d 1299, 1301 (1985) (refusing to implicitly allow workers' compensation carrier to recover interest on lien where legislature silent on issue).

This conclusion is consistent with *Abood*, a case misinterpreted by the majority. *Abood*, 431 U.S. at 211, 213. Unlike this case, *Abood* arose under a Michigan statute that explicitly authorized such fees. *Id.* at 211, 214; *see* Mich. Comp. Laws Ann. § 423.210(1)(c). Although the Court determined that the imposition of agency fees did not violate the first amendment, *Abood*, 431 U.S. at 225-26, the Court based its decision, *inter alia*, on the fact that agency fees were "constitutionally justified by the *legislative assessment* of the important contribution of the union shop to the system of labor relations." *Id.* at 222 (emphasis added). No such legislative assessment is evident in the instant case.

For the foregoing reasons, we respectfully dissent.